## J. J. SIMPSON v. E. S. HUSTON.

That the defendant in a judgment was insolvent, that the execution thereon had been returned no property found, and that the judgment had been drawing interest from the date of its rendition, and amounted to a sum specified, was held to be a sufficient averment that the judgment still remained in force or unsatisfied. The question was raised in a suit by the plaintiff in a judgment, to have the same set-off against a judgment of a later date, recovered against him by the defendant in the prior judgment. A preliminary injunction had been granted, and the question was raised by special exception.

Quere, whether in a suit on a judgment, it is necessary to aver that the judgment still remains in force, or unsatisfied.

There is no doubt of the power of Courts, independent of statute, to set-off mutual judgments against each other.

The Courts in this State are competent to afford relief in every case in which it could possibly be extended by either Courts of law or equity.

The assignee of a dormant judgment against a defendant who is alleged to be insolvent, may sustain a suit to have the same revived and set-off against a judgment which has since been recovered against him by the defendant in the dormant judgment, and which the latter is proceeding to enforce by executive process; and in the meantime execution on the later judgment will be enjoined. Quere, where the defendant in the dormant judgment is not alleged to be insolvent?

Appeal from Nacogdoches. The petition alleged the assignment of the Fleury judgment to the plaintiff pending the suit of the defendant against him, and stated as a cause for not pleading the same in said suit, in set off, that said suit was for unliquidated damages.

*J. M. Ardrey*, for appellant. The judgment imported a legal obligation to pay, and the mere description of it, in the petition, with the circumstances of identity which were given to it, constituted, *prima facie*, a good cause of action. (Gould on Pleading, p. 83, 84, S. 57.)

In respect to the second special exception, I think that also an unimportant allegation, and not in any wise material to make out the plaintiff's cause of action.

The third special exception goes to the merits of the right of the plaintiff, to set off a dormant judgment, not barred by limitation, against a judgment upon which execution could issue. That one judgment can be set off against another, all the authorities concur. (Story on Contracts, Sec. 1016; Hanchet v. Gray, 7 Tex. R. 549.)

In directing a set-off of judgments, Courts of Law proceed upon the equity of the statute authorizing set-offs. Their power consists in the authority they hold over suitors in their Courts, and it may be fitly said that the exercise of the power is the exertion of the law of the Courts rather than any known express and delegated power. Suitors may ask the interference of Courts of Law in effecting a set-off not *ex debito justiciæ*, but *ex gratia curiæ*. In a Court of Equity it is otherwise. It is a power incidental to that Court, and has long been exercised exclusively; for it is only within a few years that Courts of Law have undertaken to set-off one judgment against another. (Simson v. Hart, 14 Johns. R. 74, 75.)

Huston's suit against Simpson was for damages for breach of covenant for lease, and under the statute of Discount and Set-off, Sec. 5, Simpson could not plead his judgment in set-off, until Huston's suit was tried and his damages became liquidated. The insolvency of Huston gave the plaintiff Simpson a right to have his judgment set-off. (Treble v. Taul, 7 Monroe, 57–8.)

The setting off one judgment against another does not depend upon the statute of set-off, but upon the general jurisdiction of Courts over suitors. (3 Bibb, R. 234.)


*Clark & Walker*, for appellee. The merit of the bill should have been, that the judgment was a valid and subsisting judgment, capable then of being enforced; and of course unpaid. These things must affirmatively appear, from the plaintiff's bill. Under our system, the nicety and particularity of allegation contended for, is perhaps especially necessary, in

showing the above requisites; for, by our statutes and their settled construction by this honorable Court, a presumption of payment arises, if execution be not issued within a year after judgment, or be not kept up by a successive chain of executions. (Shapard v. Baillueul, 3 Tex. R. 26 ; Bennet v. Gamble, 1 Tex. R. 124; Scott and Rose v. Allen, 1 Tex. R. 508 ; Fessenden v. Barrett, 9 Tex. R. 475.)

The bill neither in *general terms* alleges the ownership of a valid, subsisting, unpaid judgment, nor does it state facts from which such conclusion would legally appear to the Court. The facts stated might be admitted by the defendant, and still it could have afforded the Court no ground to perceive any equitable reason for staying the defendant's execution against the plaintiff. The proceeding being to stay and prevent the enforcement of an acknowledged right, by the use of a stringent writ, the utmost certainty should appear in the bill, more than a mere *prima facie* case; such showing as would negative any other hypothesis than that the plaintiff Simpson must be injured by a refusal to grant the writ. Such a construction would defeat this bill.


HEMPHILL, CH. J. The appellee, Emery S. Huston, had recovered a judgment against the appellant, John J. Simpson ; and this is an application, by appellant, to enjoin the collection of said judgment, and to have the same reduced ·or extinguished, by setting off against it a judgment which the Fleurys had recovered against the appellee, and which by the Fleurys had been assigned to the appellant.

The most material allegations (with reference to the special exceptions, which the Court sustained to the petition) are, the statement of the recovery of the Fleury judgment ; its transfer to appellant ; that he had frequently applied to appellee to have one judgment set off against the other, which the latter had always refused ; that the appellee is notoriously insolvent, and has no property out of which the judgment against him

can be made ; and that execution thereon has been returned no property found ; and that the judgment against appellee has been drawing interest, and amounts now to a sum specified in the petition. And the appellant further represented, that in consequence of the insolvency of the appellee, he (the appellant) would entirely lose the amount of the Fleury judgment against the appellee, thus assigned to him, unless the appellee should be restrained from collecting his judgment against the appellant, and unless the judgments should be mutually set off against each other.

The appellee demurred, and for special cause excepted in substance, that it was not alleged in the petition, that there was anything due on the judgment of the Fleurys against the appellee.

2nd. No allegation that the execution returned "no property found" was the only or last execution, or that the money had not been made on some execution subsequently issued.

3rd. It does not appear at what time execution issued on said judgment, nor but that more than a year had elapsed after the issue of execution, before the transfer. These exceptions being sustained, and the appellant declining to amend, the petition was dismissed.

We are of opinion that the first exception was not well taken. It was not expressly averred that the judgment remained unsatisfied, but this was the legitimate inference from the facts alleged, viz : the insolvency of appellee, the return on the execution, of no property found, and that the judgment has been drawing interest from the date of its rendition, and now amounts to a sum which was specified. It might be insisted—and upon high authority—that the allegation that the judgment was unsatisfied, was not essential, in the statement, by the plaintiff, of his cause of action or ground for relief; that the recovery of the judgment, and its transfer to the plaintiff, were all that were necessary to establish, *prima facie*, the plaintiff's right; that if this had been an action of debt upon the judgment, it would not have been necessary to allege that the judg-

ment still remained in full force and effect, and that the plaintiff had not obtained satisfaction therefor ; that such allegation, though usual, is, according to Chitty, unnecessary, (Vol. I, p. 371 ;) and that no greater certainty of pleading was requisite in an application of this kind, than in an cction to revive the judgment.

There is great force in this view ; and if it be admitted, without any qualification, then payment or satisfaction being mere matters of defence, must be set up by defendant, and need not be averred by plaintiff. But, notwithstanding this authority, it does seem that there would be great propriety in averring that the judgment still remained in force, or unsatisfied. The fact of its being unpaid constitutes the right of action, and the averment of such fact, or something equivalent, could scarcely be regarded as surplusage. In Mr. Chitty's "Precedents" the allegation is inserted in the declaration in debt on judgment, omitting to note, as had been done in Chitty's Pleadings, that such averment was unnecessary.

But it is not material to consider whether such averment be essential or not, inasmuch as facts of an equivalent import have been averred.

The main point in this cause is that suggested by the third exception, which, in effect, raises the question whether a dormant judgment, not barred by the Statute of Limitations, can be set off against one on which execution could issue. This places the exception on the highest ground which it could have been designed to assume, and which is the least favorable to the rights of the plaintiff. But even admitting that such may be the case, and that such is the fair inference from the averments of the petition, yet, under the circumstances as averred, we are of opinion that the exception cannot be sustained, and that the plaintiff's equity is such as to entitle him to the protection of the Court, from coercion, holding as he does, a judgment, upon which indeed no execution can issue, but which, nevertheless, is a debt adjudicated and determined by law, and upon which, in fact, executions would be totally unavailing, so complete is the insolvency of defendant.

Simpson v. Huston.

There is no doubt of the power of Courts, independent of Statute, to set off mutual judgments against each other. Such power has long been exercised, by both Courts of Law and Equity. Under our system, it would be purely a matter of speculation to enquire into the peculiar grounds upon which these Courts respectively acted, and the extent to which they would go, in affording relief in the exercise of this jurisdiction. The Courts in this State are competent to afford relief in every case in which it could possibly be extended by either Courts of Law or Equity.

It has not been made to appear that the case of a dormant judgment, against one in active force, has been presented for consideration; and under ordinary circumstances, it would most probably not be considered as a valid set-off, or one which should be allowed on principles of equity. But a controlling circumstance for the plaintiff in this case is, the insolvency of the defendant. This is such as to preclude the possibility of collecting the judgment, (even if execution could go,) by any coercive means. The judgment against defendant is, in law, as conclusive as that against the plaintiff. The only difference is, that one will and the other will not authorize executive process. But the debt established by both is alike conclusive, and a matter which would be a good defence to a proceeding to revive the one, would defeat or extinguish the other. The great object of all discounts or set-offs is, to adjust the indebtedness between the parties, and to permit executory process to be enforced only for the balance that may be due. Set-offs before trial have the further recommendation, that they cut off litigation and settle the matters in one controversy; after judgment, they save the oppressive and ruinous sacrifice of property, and especially in cases where the insolvency of one of the parties prevents the possibility of recovery or compensation from him. Nothing would be more unjust, or more inequitable, than to permit a creditor to sacrifice, perhaps ruin, a debtor by execution, when he, although adjudged by law to be indebted to his debtor, is neither making an effort to pay, nor can the debt be

by possibility collected from him, unless by the debtor's retaining the money which the creditor is attempting to force off to himself. The fact that one of the parties, by a slight delay, has put it out of his power to issue execution, without revival by *scire facias*, does not make his demand the less due or conclusive ; and at all events in cases like the present, where the defendant is hopelessly insolvent, against whom executive process would be wholly nugatory, it would be perfectly competent for the Court to restrain the execution against the plaintiff, until the revival of his judgment against the defendant, if this, in a case of insolvency, were deemed essential. And it would be quite competent for the plaintiff, in cases of this kind, to pray in his petition, not only for a set-off, but also that his judgment be revived if it be really dormant, and in the mean time that execution against him should be enjoined. We are of opinion that the facts, as averred, present such a case as entitles the plaintiff to the relief prayed for in the petition ; (2 Wm. Blackstone, 869 ; 2 Story, Equity, SET-OFF ; 2 Burr. 1230 ; 4 Term R. 123 ; 8 Id. 69 ; 1 Johns. R. 144 ; 3 Id. 247 ; 7 Monroe, 456 ; Simson v. Hart, 14 Johns. R. 62 ; 7 Tex. R. 549 ;) and consequently there was error in sustaining the demurrer and dismissing the petition, and it is ordered that the judgment be reversed and cause remanded.

Reversed and remanded.