[Civ. No. 25155.   First Dist., Div. Two.   Apr. 30, 1969.]

ALFRED KROEPSCH, Plaintiff and Respondent, v. ETHEL MUMA, Defendant and Appellant.

Rawles, Nelson, Golden, Poulos & Hinkle, Rawles, Nelson, Golden & Poulos and John Golden for Defendant and Appellant.

Timothy W. O'Brien for Plaintiff and Respondent.

TAYLOR, J.—Defendant, Ethel Muma (hereafter Muma), appeals from an adverse judgment in an action for declaratory relief, contending that: 1) the evidence does not support the findings; 2) plaintiff, Alfred Kroepsch (hereafter Kroepsch), had no legal cause of action against her; and 3) even if so, his action is barred by the statute of limitations. We have concluded that there is no merit to any of these contentions.

The facts favorable to the judgment are as follows: by a deposit receipt dated February 2, 1959, Muma agreed to sell the Narrows Lodge resort with all of its equipment, licenses and supplies to Mr. and Mrs. Trayler, for $87,500, with a down payment of $20,000, and the balance in monthly installments of $500. Thereafter, some difficulties arose with the transfer of the liquor license to the Traylers. Accordingly, with the knowledge and consent of Muma, Mrs. Trayler's father and stepmother, the Powells, were substituted as buyers for the Traylers. All of the final documents for the transfer of the Narrows Lodge, including the escrow instructions, as well as the promissory note and deed of trust, dated March 13, 1959, were executed in the names of the Powells and Muma.

After the close of escrow, the Traylers and the Powells managed the resort together as had been anticipated. By August 1959, the Powells had left and the Traylers were operating the resort for them. On August 31, 1959, Muma, at the request of the Traylers, executed and delivered to them a bill

of sale purporting to transfer all of the personal property at the resort to them. The bill of sale recited that Muma received a consideration of $10,000 for the personalty. On November 16, 1959, the Traylers executed and delivered a mortgage on the personalty to the Savings Bank of Mendocino County (hereafter bank) to secure a $2,000 loan.

Thereafter, the Traylers defaulted on their obligation to the bank and left the vicinity. Muma briefly retook possession of the resort until the completion of the transfer from the Powells to Kroepsch on May 4, 1960. Kroepsch received from the Powells an assignment of all the personalty and agreed to redeem the default of the Powells on their note of March 13, 1959, to Muma. Kroepsch also agreed to deposit funds in escrow to satisfy creditors' claims and to reimburse Muma for her expense during the brief period she had again operated the resort. Kroepsch discussed the entire transaction with Muma and her attorney.

On November 24, 1960, the bank notified Kroepsch of the Traylers' default on the chattel mortgage and the pending foreclosure sale. Kroepsch redeemed the personal property at a net cost of $2,449.53. On November 26, 1963, he commenced this action in declaratory relief against Muma, and sought a setoff against his obligation to Muma in the amount of $10,000 he contended was received by Muma from the Traylers for the bill of sale, or the $2,449.53 he had paid the bank.

The court found the facts substantially as stated above, and further found: that Muma did not receive any consideration for the execution of the bill of sale of the personalty to the Traylers, and that Muma knew or should have known in August 1959, that the personal property had been transferred to the Powells under the aforementioned deed of trust of March 1959. Muma also knew or should have known that the Traylers had no right to receive a bill of sale to the personalty as the Powells were the owners and in possession of the personal property from March 1959 until the May 1960 transfer to Kroepsch. Muma had no right to execute a bill of sale of the personal property to the Traylers. By reason of Muma's execution and delivery of the bill of sale, the Traylers were placed in a position of being able to execute the chattel mortgage to the bank, resulting in Kroepsch being damaged in the sum of $2,449.53. Muma suffered no damage by reason of any claimed delay by Kroepsch and his claim was not barred by the statute of limitations. The trial court concluded that plaintiff was entitled to a credit in the sum of $2,449.53 on his

obligation to her as evidenced by the promissory note dated March 13, 1959, and entered judgment accordingly.

When, as here, the findings and judgment of the trial court are attacked as being unsupported by the evidence, the power of the appellate court ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings and judgment (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.*, 66 Cal.2d 782, 785 [59 Cal.Rptr. 141, 427 P.2d 805]).

Further, the reviewing court must give full effect on appeal to all legitimate inferences drawn by the trial court, as well as to evidentiary facts that are favorable to the prevailing party (*Estate of Peterson,* 259 Cal.App.2d 492 [66 Cal. Rptr. 629]), and we must accept the trial court's interpretation of the contract where this interpretation turns on the credibility of extrinsic evidence and the interpretation is reasonable (*Paramount Tel. Productions, Inc.* v. *Bill Derman Productions,* 258 Cal.App.2d 1 [65 Cal.Rptr. 473]).

Muma first complains that the evidence does not support the judgment as to the findings that the Powells were substituted for the Traylers with her consent and knowledge. As indicated above, although the deposit receipt was originally signed by the Traylers, their close relatives, the Powells, were substituted after some difficulties developed concerning the transfer of the liquor license to Mr. Trayler. Muma knew that the two couples planned to operate the resort together. Muma's awareness of and consent to the substitution is evidenced by the completion of all the final documents in the transaction in the name of the Powells.

We see no merit in Muma's contention that the finding that the Powells paid for and were the purchasers of the personal property, as well as the real property of the resort, is not supported by the evidence. The real property was conveyed in the deed from Muma to the Powells and the personalty was included, along with the realty, in the agreement of sale between Muma and the Traylers, for whom the Powells were substituted with Muma's knowledge and consent. On May 5, 1960, Muma subsequently acknowledged that the Powells had acquired the personalty when Muma entered into a written agreement with Kroepsch "for Payment of Obligations and Assumption of Possession," in which it was recited that Kroepsch purchased all the real and *personal property* of the Narrows Lodge *from the Powells.*

Muma next contends that the court's finding of sub-

stitution is contrary to the Civil Code, section 1698, which provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." However, the manner in which this transaction was conducted establishes that there had been an executed oral agreement within the provisions of the statute. Here, the closing of the escrow with all of the final documents in the name of the Powells constituted complete performance. An executed oral agreement will serve as modification of a written agreement without regard to the presence or absence of consideration (*Eluschuk* v. *Chemical Engineers Termite Control, Inc.*, 246 Cal.App.2d 463 [54 Cal.Rptr. 711]).

The finding that the Powells sold and transferred the personal property to Kroepsch is supported by uncontroverted evidence. In purchasing the resort, Kroepsch acquired all of the equipment and personalty without any knowledge of the Traylers' encumbrance. He also paid for certain additional personal property acquired by Muma during the brief period she had again operated the resort after the default of the Powells and the departure of the Traylers. The documents transferring the resort from the Powells to Kroepsch indicate that any and all rights of the Powells had been conveyed to him.

Muma contends that the evidence was uncontroverted that she received no consideration for the bill of sale, and that the court should have made such a finding. While it is true that the only evidence of consideration was the recital of $10,000 in the bill of sale itself and the court found she had not been paid such amount, we do not think it necessary for the court to have made any additional finding on whether or not any consideration had, in fact, been paid. The essence of the cause of action here is that Muma knew or should have known that she had sold the personal property to the Powells, and that in giving the Traylers the bill of sale, she wrongfully gave them indicia of ownership upon which the bank's chattel mortgage was predicated.

Muma next contends that there is no evidence to support the conclusion that Kroepsch had any equitable cause of action against her. She argues that since all the personalty was transferred to the Powells, the Traylers received nothing by the bill of sale and the bank's chattel mortgage based thereon was invalid and unenforceable (*Taggart* v. *Cal-Linda Packing Co.*, 146 Cal.App.2d 545 [304 P.2d 172]). We can only interpret the contention as an argument that Kroepsch

should have first pursued his remedies against the Powells or the Traylers. Even assuming, without conceding, that this would have been the most prudent and complete manner of proceeding, we do not think it was essential under the peculiar circumstances of this case. By redeeming the chattel mortgage on the personalty, Kroepsch succeeded to all of the rights of the bank against the Traylers and Muma. As to the bank, both the Traylers and Muma were wrongdoers. Muma knew or should have known that all of the personal property of the resort had been transferred to the Powells in March 1959, and that she no longer had any interest in it. Yet, she executed the bill of sale of the personalty to the Traylers in August 1959 and put them in a position to execute the chattel mortgage. Thus, the bank had a cause of action against Muma regardless of the validity of its mortgage, and Kroepsch, as successor to the bank's rights, also had a cause of action against Muma.

Although the doctrine of setoff is embodied in the statute, it is an equitable doctrine. (*Mehcrin* v. *Saunders,* 131 Cal. 681 [63 P. 1084, 54 L.R.A. 272]), which differs from the statutory remedy in that it requires some particular circumstances based on equitable grounds such as fraud, insolvency or the like (*Lyon* v. *Petty,* 65 Cal. 322 [4 P. 103]). ▮ A court of equity will compel a setoff where such relief is necessary to enable the party claiming the relief to collect his claim. For example, the insolvency of the party against whom the relief is sought has been held to afford sufficient grounds for invoking this equitable remedy (*Hobbs* v. *Duff,* 23 Cal. 596, 626-627). The fact that the bank's demand against the Traylers had been reduced to judgment was not an obstacle to the allowance of a setoff against Muma (*Machado* v. *Borges,* 170 Cal. 501 [150 P. 351]). ▮ In an action for declaratory relief, it is proper for the court to grant any relief consistent with the evidence and the pleadings (*Birdsong* v. *Welch,* 181 Cal.App.2d 749 [5 Cal.Rptr. 474]). ▮ There being evidence of wrongdoing by Muma and the Traylers, as well as of the Traylers' insolvency, it follows that the trial court properly allowed Kroepsch an equitable setoff against Muma.

▮▮ Finally, Muma argues that, even if established, any cause of action Kroepsch may have is barred by the statute of limitations, citing Code of Civil Procedure section 337, subdivision 1 (four years after the date of the deposit receipt) and Code of Civil Procedure section 338, subdivision 3 (three years after the bill of sale). This contention ignores

the fact that the action was for declaratory relief pursuant to section 1060 of the Code of Civil Procedure. Such actions are equitable in nature by reason of the type of relief sought (*Cook* v. *Winklepleck,* 16 Cal.App.2d Supp. 759, 765 [59 P.2d 463]) and the statute of limitations has no application to setoff claims of an equitable nature based on the same series of transactions (*Nickel* v. *Looser,* 61 Cal.App.2d 224 [142 P.2d 458]). As long as the obligation to pay the purchase price for the property exists, the right to claim setoff against the original seller, whose wrongful conduct permitted the property to become encumbered, would continue. Furthermore, assuming, without conceding, that any statute of limitations applies, the only pertinent one is Code of Civil Procedure section 338, subdivision 4, relating to relief on grounds of fraud or mistake. In the instant case, the action was commenced within three years of Kroepsch's discovery on November 24, 1960, of Muma's wrongful action in attempting to resell the personal property to the Traylers.

In view of the above, it is not necessary to discuss Muma's remaining contention concerning her attorney fees, if she prevails on appeal.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.