BONHAM STATE BANK, Petitioner,

v.

Raymond G. BEADLE, individually and d/b/a The Blue Max, Blue Max and Blue Max, Inc., RGB Investments, Inc., Blue Max, Inc., and Blue Max Racing, Inc., Respondents.

No. 94–0838.

Supreme Court of Texas.

Argued Jan. 18, 1995.

Decided June 8, 1995.

Paula L. Miano, Millard O. Anderson, Jr., Dallas, for petitioner.

Robert H. Westerburg, Dallas, Elizabeth Redchuk, Flower Mound, for respondents.

Justice OWEN delivered the opinion of the Court in which all the Justices join.

This case presents two questions: whether a declaratory judgment proceeding is appropriate for obtaining an offset of two prior judgments and whether venue for such an action is proper in a county in which neither judgment was rendered or domesticated. We hold that a declaratory judgment action may be maintained to offset two final judgments, and accordingly, we reverse the judgment of the court of appeals on that issue. We further hold that venue is proper in a county in which either of the judgments was rendered or domesticated, and accordingly, affirm the judgment of the court of appeals on the issue of venue.

## I

The history leading up to the suit in Fannin County from which this action emanates is somewhat complex. The Fannin County proceeding is the third of four suits between the parties before us.

In 1991, Bonham State Bank filed two actions against Raymond G. Beadle (individually and d/b/a The Blue Max, Blue Max, and Blue Max, Inc.), RGB Investments, Inc., Blue Max, Inc., and Blue Max Racing, Inc. (collectively Beadle) to recover amounts owed under certain notes and guaranty agreements. Bonham Bank first filed suit in the 191st District Court in Dallas County, Texas, on January 30, 1991. An additional party, Chaparral Trailers, Inc. (Chaparral), was included in that suit, although Bonham Bank attempted to nonsuit Chaparral prior to judgment. On January 31, 1991, the day after the Dallas County suit was filed, Bonham Bank brought a second suit in a North Carolina state court against Beadle and Chaparral. Chaparral was dismissed from this action by Bonham Bank prior to judgment.

In the Dallas County proceedings, Bonham Bank sought a writ of sequestration on certain property of Beadle and Chaparral. The property was seized, and Bonham Bank posted a replevy bond. Without court order or approval, Bonham Bank subsequently sold the property.

During the pendency of the Dallas County suit, on May 7, 1991, Bonham Bank obtained a judgment in the North Carolina proceedings in excess of $1,650,000.[1] Beadle promptly asserted res judicata as a defense in the Dallas County suit. Although neither Beadle nor Chaparral had initiated that suit and neither sought affirmative relief in that case, and although Chaparral had been dismissed as a defendant, the Dallas County district court entered a judgment dated February 18, 1992, in favor of Beadle and Chaparral, jointly and severally, and against Bonham Bank in the amount of $75,000, which was the value of the property replevied, on a theory of res judicata. No prejudgment or post-judgment interest was expressly awarded in the judgment, and there was no award of attorneys' fees. Bonham Bank appealed that judgment. In an unpublished opinion, the court of appeals affirmed. We declined to grant the writ of error in that case. *Bonham State Bank v. Beadle*, 37 Tex.Sup.Ct.J. 24 (Oct. 20, 1993).

The summary judgment evidence in the Fannin County suit reflects that on April 16, 1991, Raymond Beadle, Blue Max, Inc., Blue

---

1. Judgment was entered against Raymond G. Beadle, RGB Investments, Inc., Blue Max, Inc., and Blue Max Racing, Inc., jointly and severally, in the principal amount of $798,000, plus accrued interest of $44,305.90, post-judgment interest on the principal sum of $798,000 at the rate of 12.18% per annum from April 30, 1991, plus attorneys' fees of $122,789.57 and costs of court. The judgment further provided that Bonham Bank recover from Raymond G. Beadle the additional principal sum of $547,463.12, prejudgment interest of $67,315.59, post-judgment interest from April 30, 1991, at the rate of 12% per annum, and attorneys' fees in the amount of $89,813.94.

Max Racing, Inc., RGB Investments, Inc., and Chaparral Trailers, Inc., assigned to their counsel all of their respective interests in their cause of action against Bonham Bank for recovery on the replevy bond. On February 20, 1992, the same parties similarly assigned to their counsel the judgment in the Dallas County suit. Notice of assignment was not given to Bonham Bank until February of 1993.

It is undisputed that both the North Carolina and the Dallas County judgments are final and non-appealable.

In April of 1993, Bonham Bank brought this declaratory judgment action (the third suit) in Fannin County, Texas, to obtain a judicial determination regarding its right to offset the adverse $75,000 judgment against the $1,650,000 judgment in its favor. Beadle filed a motion to transfer venue to Dallas County, which was denied by the trial court. The trial court subsequently rendered summary judgment in favor of Bonham Bank offsetting the North Carolina and Dallas County judgments.[2]

The fourth suit, immaterial to our disposition of this case, is an application for turnover relief subsequently brought by Bonham Bank in Dallas County against Beadle to obtain the $75,000 awarded in the Dallas County judgment.

Beadle appealed the summary judgment entered by the Fannin County district court, and the court of appeals reversed, holding that declaratory judgment was inappropriate because there was no uncertainty as to any party's rights or status under the judgments. 880 S.W.2d at 163. The court of appeals further held that venue was not proper in Fannin County and that the case should have been transferred to Dallas County in accordance with Beadle's motion to transfer. *Id.* We first consider the court of appeals' holding as to the propriety of a declaratory judgment proceeding in this case.

**2.** The Fannin County judgment recites that Bonham Bank is entitled to a credit or offset of the $75,000 awarded to Raymond G. Beadle, RGB Investments, Inc., Blue Max, Inc., Chaparral Trailers, Inc., and Blue Max Racing, Inc. under the February 18, 1992, judgment in the 191st District Court, from and against the amounts awarded to Bonham Bank against Raymond G.

## II

The stated purpose of the Declaratory Judgments Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX.CIV.PRAC. & REM.CODE § 37.002(b) (Vernon 1986). The statute expressly provides that it is "remedial" and "is to be liberally construed." *Id.*

█ A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n,* 640 S.W.2d 778, 779–80 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Chapman v. Marathon Mfg. Co.,* 590 S.W.2d 549, 552 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Davis v. Dairyland County Mut. Ins. Co.,* 582 S.W.2d 591, 593 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Sub–Surface Constr. Co. v. Bryant–Curington, Inc.,* 533 S.W.2d 452, 456 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.); *Littlejohn v. Johnson,* 332 S.W.2d 439, 441 (Tex.Civ.App.—Waco 1960, no writ).

This case presents a bona fide, concrete controversy ripe for resolution by way of declaratory judgment. Bonham Bank asserts that it has a right to offset a $75,000 judgment obtained by Beadle and Chaparral against Bonham Bank's domesticated North Carolina judgment in the amount of $1,650,000 against Beadle. Beadle disputes that Bonham Bank has such a right.

Beadle, RGB Investments, Inc., Blue Max, Inc., and Blue Max Racing, Inc. pursuant to the May 7, 1991, North Carolina judgment. Additionally, the judgment of the Fannin County district court awarded attorneys' fees to Bonham Bank against these same defendants, jointly and severally, together with post-judgment interest at the rate of 10% percent, and taxed costs against Beadle.

As early as 1855, Texas courts held that "[t]here is no doubt of the power of courts independent of statute to set off mutual judgments against each other. Such power has long been exercised by both courts of law and equity." *Simpson v. Huston,* 14 Tex. 476, 481 (1855); *see also McManus v. Cash & Luckel,* 101 Tex. 261, 108 S.W. 800, 802 (1908); *Hanchett v. Gray,* 7 Tex. 549, 553 (1852) (allowing setoff of two previous judgments); *Citizens Indus. Bank of Austin v. Oppenheim,* 118 S.W.2d 820 (Tex.Civ.App.—Austin 1938, writ dism'd w.o.j.); *Pierson v. Farmers' State Guar. Bank,* 206 S.W. 730, 731 (Tex.Civ.App.—San Antonio 1918, no writ) (courts' power to set off mutual judgments is well settled). We have thus recognized that setoff is an appropriate judicial response to the serious practical difficulties encountered when parties have mutual judgments, particularly when one of them is impecunious. *Simpson,* 14 Tex. at 481. While this line of cases is an old one, it has never been disavowed by our Court.

A declaratory judgment action is an appropriate vehicle for the offset of two final judgments. The subjects enumerated in the Declaratory Judgments Act are not exclusive, as the statute itself clearly states:

> The enumerations in Sections 37.004 and 37.005 do not limit or restrict the exercise of the general powers conferred in this section in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty.

TEX.CIV.PRAC. & REM.CODE § 37.003 (Vernon 1986). The authority to grant a declaratory judgment like the one sought in this case flows from the "general powers" of the courts to enter a declaratory judgment given under the Declaratory Judgments Act. *Id.; see also Great Am. Ins. Co. v. Fred J. Gallagher Constr. Co.,* 16 Ariz.App. 479, 481, 494 P.2d 379, 381 (1972) (holding that trial court should have awarded declaratory judgment offsetting mutual judgments, with the result that surety would only be liable on supersedeas bond for the difference between the two). A trial court has discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties. *James v. Hitchcock Indep. Sch. Dist.,* 742 S.W.2d 701, 704 (Tex.App.—Houston [1st Dist.] 1987, writ denied); *United Interests, Inc. v. Brewington, Inc.,* 729 S.W.2d 897, 905 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

The court of appeals likened the suit by Bonham Bank to a suit to "interpret" the judgments and noted there is a split of authority in other jurisdictions as to whether a declaratory judgment may be used to interpret a prior judgment. 880 S.W.2d at 162. Bonham Bank does not seek a declaration of the meaning of either judgment. It seeks a judicial determination that it is entitled to offset the two judgments.

Cases that deal with the question of whether a declaratory judgment may be used to interpret another judgment are inapposite. There are entirely different considerations at play. A suit to "interpret" a judgment is usually a guise to obtain review or modification of a judgment outside of the appellate process or an attempt to collaterally attack a judgment. *See, e.g., Segrest v. Segrest,* 649 S.W.2d 610, 611–12 (Tex.1983) (disapproving use of a declaratory judgment as a tool to collaterally attack a final divorce decree), *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983). Neither of those situations is present here.

The use of a declaratory judgment to offset judgments is more analogous to declaring a right to offset in other contexts. *See, e.g., Ames Trust & Sav. Bank v. Reichardt,* 254 Iowa 1272, 121 N.W.2d 200, 204–05 (1963) (upholding entry of a declaratory judgment finding the right of a bank to set off a deposit against unmatured debt of deceased depositor); *National Bank of Commerce of Pine Bluff v. Hart Cotton Co.,* 273 Ark. 78, 617 S.W.2d 343, 345 (1981) (in declaratory judgment proceeding, bank was entitled to declaration of right of offset against funds in customer's account); *Kroepsch v. Muma,* 272 Cal.App.2d 467, 77 Cal.Rptr. 348, 353 (1969) (upholding declaratory judgment offsetting an unliquidated claim for reimbursement against a judgment). Consideration of other jurisdictions' use of their declaratory judgment statutes is particularly appropriate in light of the mandate in our Declaratory

Judgments Act that it "shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it...." TEX.CIV.PRAC. & REM.CODE § 37.002(c) (Vernon 1986).

■ A justiciable controversy exists in this case. The very real concern that Beadle will be able to collect the $75,000 judgment, while Bonham Bank will be unable to collect its much larger judgment against Beadle, who may well be without funds to pay Bonham Bank, underscores the concrete nature of the controversy. Although the amount that Bonham Bank owes Beadle is dwarfed by the amount that Beadle owes Bonham Bank, Bonham Bank could be forced to pay Beadle $75,000, but remain unable to collect the $1,650,000 judgment that Beadle owes Bonham Bank. As this Court explained in *Simpson v. Huston, supra,* setoffs "save the oppressive and ruinous sacrifice of property, and especially in cases where the insolvency of one of the parties prevents the possibility of recovery or compensation from him." 14 Tex. at 481.

The risk that the debt to Bonham Bank will go unsatisfied, while Bonham Bank must pay the full amount of the judgment against it, is not the only practical harm that may occur in situations where mutual judgments are not offset. In most instances, a party with a judgment against it must disclose that obligation in financial statements. An outstanding judgment could adversely affect the credit rating of a party or interfere with that party's ability to transact business. Bonham Bank and those similarly situated should not be powerless, and required to await the day, if and when it comes, that the judgment-proof party attempts to execute on *its* judgment to obtain relief. Nor is it enough to say that Bonham Bank could simply pay the judgment to repair any damage to its credit-worthiness. The fact remains that Bonham Bank would be forced to pay money to someone who owes it a substantially greater amount but who is unlikely to ever pay that debt.

A contrary result would leave open the possibility that one in Bonham Bank's position could be financially ruined at the hands of another who owed it substantially more

than the amount it was otherwise required to pay. This is one of the contingencies our Court foresaw and sought to foreclose in *Simpson v. Huston, supra:*

> Nothing would be more unjust or more inequitable than to permit a creditor to sacrifice, perhaps ruin, a debtor by execution, when he, although adjudged by law to be indebted to his debtor, is neither making an effort to pay nor can the debt be by possibility collected from him unless by the debtor's retaining the money which the creditor is attempting to force off to himself.

*Simpson,* 14 Tex. at 481.

Beadle contends that declaratory relief is inappropriate here because Bonham Bank should have requested a setoff in the court that entered the $75,000 judgment against it. Even if the setoff sought by Bonham Bank could have been awarded in that court, it does not follow that Bonham Bank is forever foreclosed from seeking an offset in another forum.

First, it was not until rendition of judgment in the Dallas County suit that Bonham Bank had any right of setoff. *See Spokane Security Fin. Co. v. Bevan,* 172 Wash. 418, 20 P.2d 31, 33 (1933) ("[I]t is of course true that no right of set-off as to judgments can come into existence until both judgments have been rendered"); *see also Ketcham v. Selles,* 96 Or.App. 121, 772 P.2d 419, 423 (1989) (en banc), *review denied,* 308 Or. 315, 779 P.2d 618 (1989).

This Court long ago held that a party's failure to obtain an offset of two judgments at the time the second judgment is rendered does not "prejudice the right of the [party seeking offset] or estop him from claiming the set-off in a separate proceeding." *Wright v. Treadwell,* 14 Tex. 255, 257 (1855). In a case very similar to this one, a court of appeals following *Wright* held that the party seeking to offset two judgments had not waived that right. *See Kelly Furniture, Carpet & Hardware v. Shelton,* 62 S.W. 794, 795 (Tex.Civ.App.1901, no writ). It was held that "[t]he fact that [Kelly Furniture] did not plead its judgment as a set-off or counter-

claim to [Shelton's] suit is no sufficient ground for refusing the relief sought." *Id.*

Nor can it be said that Bonham Bank's right of setoff was a compulsory counterclaim in the suit in Dallas County. The right to offset two final judgments is independent of the merits of either of the underlying judgments. *See Kelly Furniture,* 62 S.W. at 794. Unlike a counterclaim that has not been reduced to judgment (which must be asserted if it arises out of the same transaction or occurrence as the plaintiff's claims, *see* TEX. R.CIV.P. 97(a)), the right to recover the amount owed under a prior final judgment is not factually dependent on the disposition of the second lawsuit. Similarly, a request to set off final judgments should not be treated as an affirmative defense. *See Ketcham,* 772 P.2d at 421 (although the right to offset one claim against another can be an affirmative defense, the right to offset two judgments is not).

From a practical standpoint, a party should be able to seek offset of judgments in a subsequent proceeding because the need for or desirability of an offset may not be apparent at the time the second judgment is rendered. For example, a party may be indifferent as to whether two judgments should be offset until it has attempted to execute on a judgment, only to find the other party judgment proof. Similarly, one party may become insolvent *after* both judgments have been rendered. Declaratory judgment is designed to resolve just such disputes.

■ Generally, only mutual judgments are subject to offset. *See e.g., Pierson v. Farmers' State Guar. Bank, supra,* 206 S.W. at 731. In the trial court, Beadle presented the affidavit of its counsel, which stated that Chaparral is a judgment creditor under the $75,000 judgment against Bonham Bank, but that Chaparral is not a judgment debtor under the North Carolina judgment. This does not affect our disposition of the rights between Bonham Bank and Beadle. Bonham Bank initiated this suit, seeking the offset even though the $75,000 judgment is in favor of Chaparral and Beadle, jointly and severally. If this were a suit in which Beadle had attempted to offset its judgment against Bonham Bank, Bonham Bank may well have been in a position to argue that it could be subjected to the specter of double liability since Chaparral could later assert that its rights under the judgment were unaffected by the offset. We need not speculate as to the outcome of such a contingency. Bonham Bank should be entitled to the relief it affirmatively seeks against Beadle, even though any rights Chaparral may have against it remain unadjudicated by this Court. The lack of mutuality can be waived by one in Bonham Bank's position.

Finally, it should be noted that in the trial court, one of the issues raised by Beadle in opposition to summary judgment was an April 16, 1991, assignment to its counsel of its cause of action against Bonham Bank and a February 20, 1992, assignment to counsel of the Dallas County judgment. Beadle submitted affidavits setting forth the fact of the assignments. However, Beadle raised no point of error in the court of appeals regarding the effect of the assignment nor did it provide any argument. Consequently, we do not reach the issue. *San Jacinto River Auth. v. Duke,* 783 S.W.2d 209, 210 (Tex. 1990); *Vawter v. Garvey,* 786 S.W.2d 263, 264 (Tex.1990). Nor do we reach the question of what rights, if any, the assignee may have against Bonham Bank. We note, however, that there is authority to the effect that as a general proposition, assignees of a judgment are subject to all equities existing between the original parties, including a right of setoff. *McManus,* 108 S.W. at 803, *Wright,* 14 Tex. at 257, *L.C. Russell Co. v. Pipeguard Corp.,* 504 S.W.2d 596, 600 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.). There is additional authority to the effect that an assignee of a cause of action takes subject to all defenses and equitable claims until the obligor receives notice of the assignment. *See generally* RESTATEMENT (SECOND) OF CONTRACTS § 336 (1981); *Vogt v. Jones,* 396 S.W.2d 539, 540 (Tex.Civ.App.—Fort Worth 1965, no writ). While *McManus* holds that a judgment assigned to an attorney as compensation for bringing a suit should not be subject to setoff by another subsequent judgment, *McManus* further indicates that where the attorney had notice of the cause of action giving rise to the subsequent judgment, off-

set should be permitted. *Cf. Dallas Joint Stock Land Bank of Dallas v. Lancaster,* 122 S.W.2d 659 (Tex.Civ.App.—Waco 1938, writ dism'd w.o.j.). We raise the question, but do not decide, whether in this era attorneys should stand on any different footing than other assignees.

The dispute before us is between Bonham Bank and Beadle. The trial court did not err in entering summary judgment in favor of Bonham Bank as against Beadle.

### III

 The final question is whether venue was proper in Fannin County. If there is any probative evidence in the entire record that venue was proper, we must uphold the trial court's determination on the matter of venue. Tex.Civ.Prac. & Rem.Code § 15.064(b); *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1993).

Actions brought under the Declaratory Judgments Act are governed by the general venue rules for civil actions. *See Stiba v. Bowers,* 756 S.W.2d 835, 837 (Tex.App.—Corpus Christi 1988, no writ); *Citizens Nat'l Bank v. Cattleman's Prod. Credit Ass'n,* 617 S.W.2d 731, 734 (Tex.Civ.App.—Waco 1981, no writ); *Midcon Pipeline Equip. Co. v. Smith,* 623 S.W.2d 166, 167 (Tex.App.—Fort Worth 1981, no writ); *Amoco Prod. Co. v. Texas Elec. Serv. Co.,* 614 S.W.2d 194, 196 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ); *H. Molsen & Co. v. Harp & Lovelace,* 516 S.W.2d 433, 434 (Tex.Civ.App.—Amarillo 1974, no writ).

No specific venue provision governs a cause of action to offset two judgments. The general venue provision provides that venue lies where all or part of the cause of action accrued or where the defendant resides if the defendant is a natural person. Tex.Civ.Prac. & Rem.Code § 15.001 (Vernon 1986). The only element of a cause of action for offsetting two or more mutual judgments is the rendition of those judgments. Accordingly, a cause of action or a part thereof accrues in a county where either of the judgments was rendered, or in the case of a foreign judgment, the county where it was domesticated. Under this analysis,

venue is not proper in Fannin County because neither of the judgments at issue was rendered or domesticated there. Venue would be proper in Dallas County, however, because the judgment in the Dallas County proceedings was rendered in Dallas County, and Bonham Bank domesticated the North Carolina judgment in the 162nd District Court of Dallas County. We consequently affirm the judgment of the court of appeals as to venue.

*        *        *        *        *        *

For the foregoing reasons, we reverse the portion of the judgment of the court of appeals regarding the propriety of a declaratory judgment action and hold that Bonham Bank is entitled to a declaratory judgment regarding its right to offset. We affirm the portion of the judgment of the court of appeals holding that the trial court erred in refusing to grant Beadle's motion to transfer venue to Dallas County, and therefore remand the case to the trial court for further proceedings consistent with this opinion.