CV5-221 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00221-CV







Anderson-Clayton Bros. Funeral Homes, Inc.; Crespo & Sons, Inc.; Laurel Land Funeral
Home, Inc.; Laurel Land Funeral Home of Fort Worth, Inc.; Restland Funeral Home,
Inc.; and Singing Hills Funeral Home, Inc., Appellants


v.



Texas Department of Banking and Catherine A. Ghiglieri, in her official capacity as the
Banking Commissioner of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 94-09305, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








PER CURIAM


 Anderson-Clayton Bros. Funeral Homes, Inc.; Crespo & Sons, Inc.; Laurel Land
Funeral Home, Inc.; Laurel Land Funeral Home of Fort Worth, Inc.; Restland Funeral Home,
Inc.; and Singing Hills Funeral Home, Inc., (the "funeral homes") bring one point of error in their
appeal from the trial-court order that dismissed their declaratory judgment action for lack of
jurisdiction because the court found that no justiciable issue existed. Because we hold that a
justiciable issue exists, we will reverse the trial-court order and remand the cause for further
proceedings.



The Controversy


 The funeral homes sell prepaid funeral plans under permits issued by appellees (the
"Department"). They must place a certain percentage of the prepaid funds in trust accounts until
the funeral services are actually provided. Tex. Rev. Civ. Stat. Ann. art. 548b, § 5(a)(2) (West
Supp. 1996) ("Art. 548b"). The funds placed in the trust accounts earn interest, accrue income,
and otherwise increase in value. The accumulated profits ("excess earnings") are the property of
the funeral homes and may be withdrawn from the trust accounts under certain circumstances. 
Art. 548b, § 5(a)(4)(D).

 The amount of the trust-account money that may be invested in stocks and bonds
is regulated:



At no time may more than 70 percent of the prepaid funeral benefits trust funds
related to a single permit holder be invested in:


 (1) bonds, evidences of indebtedness, obligations, notes and participation
described by Subsection (d)(5) of this section; or


 (2) common or preferred stock described by Subsection (d)(7) or (8) of
this section.



Art. 548b § 5A(e). The interpretation of this section of the statute is the heart of this controversy.

 The funeral homes contend that the proper interpretation of the investment limit is
that not more than 70% of the fund may be invested in either subsection one (bonds) or subsection
two (stocks). That is, if 60% of the trust account is invested in bonds, then 40% may be invested
in stocks. They contend that the Department's interpretation of the limit is that not more than
70% of the fund may be invested in the combination of subsections one and two. That is, if 60%
of the trust fund is invested in bonds, then not more than 10% may be invested in stocks. The
funeral homes assert that the Department's construction of the statute harms them because it has
an adverse impact on the trust-fund earnings. The Department responds that no justiciable issue
exists because it has neither interpreted the statute nor taken any action adverse to the funeral
homes.

 The Department has never interpreted this section of the statute in a formal rule
published in the Texas Administrative Code. See Tex. Gov't Code Ann. §§ 2001.021-2001.038
(West 1996). The funeral homes pleaded that they learned of the Department's interpretation in
"conversations and correspondence" and assert the "conversations and correspondence" are
sufficient to create a justiciable issue. (1) We need not decide whether the funeral homes are correct
because other indicia of an actual controversy exist. We express no opinion on the competing
interpretations of the statute in question.



Justiciable Issue


 The Uniform Declaratory Judgments Act provides that a person whose rights,
status, or other legal relations are affected by a statute may have any question of construction or
validity arising under the statute determined and obtain a declaration of rights, status or other legal
relations. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a)(West 1986). The statute is remedial
and to be liberally construed. Id. § 37.002(b); Hawkins v. Texas Oil & Gas Corp., 724 S.W.2d
878, 891 (Tex. App.--Waco 1987, writ ref'd n.r.e.). A declaratory judgment is appropriate only
if a real controversy exists as to the rights and status of the parties and the declaration will resolve
the controversy. Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995); Texas Ass'n
of Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Southwest Airlines Co.
v. Texas High-Speed Rail Auth., 863 S.W.2d 123, 125 (Tex. App.--Austin 1993, writ denied). 
The dispute may not be hypothetical or concern an abstract question of law that the judgment will
not actually determine; if so, the court would be giving an improper advisory opinion. See
Southwest Airlines, 863 S.W.2d at 125.

 A litigant does not have to incur actual damage or injury; possible losses have
justified the rendition of a declaratory judgment. Bonham, 907 S.W.2d at 465; Ainsworth v. Oil
City Brass Works, 271 S.W.2d 754, 760-61 (Tex. Civ. App.--Beaumont 1954, no writ). In
Bonham, 907 S.W.2d 465, the Bonham State Bank brought a declaratory judgment action
requesting the offset of two final judgments. Bonham held a judgment against Beadle for
$1,650,000; Beadle, possibly a "judgment-proof" party, held a judgment against Bonham for
$75,000. The court had to determine whether a justiciable controversy existed. Bonham at 469. 
It discussed the concern that Bonham would have to disclose the judgment against it in financial
statements and an outstanding judgment could adversely affect its credit rating or interfere with
its ability to transact business. Further, the bank should not have to wait until the other party,
who might be judgment-proof, took action to execute on its judgment to obtain relief in the form
of an offset. Nor should the bank, in order to protect its credit, be forced to pay money to
someone who owed it a greater amount but who might not pay that debt. Id. None of the possible
outcomes had happened at the time that the court granted Bonham declaratory relief.

 The Department claims that no actual controversy exists because it has taken no
adverse action against the funeral homes. It is undisputed that the Department has not yet revoked
any licenses to sell prepaid funeral plans. The Department contends that the funeral homes should
invest their funds according to their interpretation of the statute and then challenge the
Department's alleged interpretation only if the Department actually revokes their licenses. The
funeral homes respond that they have complied with the Department's interpretation in order to
avoid losing their permits.

 The Department may issue an order to cancel, suspend, or refuse to renew a permit
to sell prepaid funeral plans if the Department finds "by examination or other credible evidence"
that a funeral home has violated the Act. Art. 548b, § 4. The second amended petition for
declaratory judgment, the live pleading, refers to an October 31, 1993 "Report of Examination"
by the Banking Department that explicitly found one of the trust accounts failed to comply with
the "70% limitation" for the categories of stocks and bonds as outlined in section 5A of article
548b. This appears to be the type of report that forms the predicate for an action to suspend or
revoke a license under section 4.

 The examination report expressly finding failure to comply with the investment
limitation indicates that the funeral homes are correct that they and the Department have differing
interpretations of that section. Therefore, a declaration of the meaning of the statutory section at
issue would not be hypothetical or abstract; if resolved in favor of the funeral homes, they could
invest according to their interpretation of the statute without triggering further reports of non-compliance which in turn could initiate a license revocation proceeding.



Alternative Ground for Dismissal


 We must uphold the judgment on any legal theory that was before the district court,
even if it gave an incorrect reason in its judgment dismissing the plaintiffs' cause of action. 
Guaranty County Mut. Ins. Co. v. Reyna, 709 S.W.2d 647, 648 (Tex. 1986); Lopez v. Public
Util. Com'n of Texas, 816 S.W.2d 776, 781 (Tex. App.--Austin 1991, no writ). The Department
complained that the funeral homes failed to exhaust their administrative remedies because they did
not perfect an appeal from the Commissions's order of June 3, 1994. This order resulted from
a hearing on the funeral homes' application to withdraw excess earnings from the trust accounts. 
Art. 548b, § 5(a)(4)(D). The order allowed the funeral homes to withdraw money from their
accounts. There is no provision for judicial review of an order that gives the applicant its
requested relief by granting permission to withdraw money from the trust accounts. The only
provisions for judicial review concern an order denying permission to withdraw money, which
is reviewable by trial de novo in district court. Art. 548b, § 5(a)(4)(d)(v). Therefore, even if the
order of June 3, 1994, had clearly declared the Department's interpretation of the rule, (2) that order
does not provide a vehicle for judicial review that would invoke the doctrine of exhaustion of
administrative remedies.

 We sustain the funeral homes' sole point of error, reverse the trial-court judgment
and remand the cause for further proceedings.


Before Chief Justice Carroll, Justices Jones and B. A. Smith

Reversed and Remanded

Filed: May 15, 1996

Do Not Publish

1.   The conversations and correspondence are not as formal as the "policy statements"
issued by the Department of Human Services that the court considered to be rules under
the Administrative Procedure Act. Texas Dep't of Health v. Texas Health Enter., Inc., 871
S.W.2d 498, 501 n.2 (Tex. App.--Dallas 1993, writ denied) (citing Texas Dep't of Human
Servs. v. Christian Care Ctrs., 826 S.W.2d 715, 717 (Tex. App.--Austin 1992, writ denied)).
2.   The Department relies on a table attached to the order as indicating the
interpretation of the rule. The table simply summarizes dollar amounts in various
investments, with a notation to the effect that the amounts complied with the 70%
limitation.


actual controversy exists because it has taken no
adverse action against the funeral homes. It is undisputed that the Department has not yet revoked
any licenses to sell prepaid funeral plans. The Department contends that the funeral homes should
invest their funds according to their interpretation of the statute and then challenge the
Department's alleged interpretation only if the Department actually revokes their licenses. The
funeral homes respond that they have complied with the Department's interpretation in order to
avoid losing their permits.

 The Department may issue an order to cancel, suspend, or refuse to renew a permit
to sell prepaid funeral plans if the Department finds "by examination or other credible evidence"
that a funeral home has violated the Act. Art. 548b, § 4. The second amended