# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00667-CV

**Alfred Johnson, D.O., Appellant**

**v.**

**The State of Texas; Texas Medical Board; Mari Robinson, J.D.,
in her Official Capacity as Interim Executive Director and Director of Enforcement
for the Texas Medical Board; et al., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-08-001657, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Dr. Alfred Johnson, D.O., appeals a district court judgment dismissing his suit against appellees for want of subject-matter jurisdiction. We will affirm the judgment.

Dr. Johnson is an osteopathic physician currently licensed by appellee, the Texas Medical Board, to practice medicine in the State of Texas. *See* Tex. Occ. Code Ann. § 155.001 (West 2004). On March 26, 2008, the Board's director of enforcement wrote Johnson, notifying Johnson that a complaint had been initiated against him in regard to:

> [t]he diagnosis, evaluation/treatment (i.e. tetanus injection for Klebsiella infection; immune globulin etc.), billing practices, charges, billable services and breach of confidentiality with fellow physician (Dr. Roby) regarding care for patient K.J. during 2003-2004.[1]

---

[1] For privacy, the Board redacted all but the patient's initials.

Johnson wrote back on April 7 requesting clarification of the subject matter of the investigation and further details regarding the complaint. On April 16, the Board's director of enforcement sent Johnson another letter, which included the identical language set out above, but this time also enclosed a medical practice questionnaire and a form affidavit for medical records that Johnson was instructed to complete and return with "a complete (medical and billing) copy of the patient records" for K.J. for the 2003-04 time period.

On April 25, 2008, a Board investigator wrote Johnson advising him that the Board had initiated a formal investigation concerning allegations of professional negligence regarding the care of patient K.J. Following this letter, on April 29, the investigator issued an administrative subpoena to Johnson for "any and all medical and billing records" of K.J.

Subsequently, Johnson filed suit against the State of Texas; the Board; the Board's executive director and director of enforcement; and the Board investigator who issued the subpoena, naming all of the individual defendants in their official capacities[2] (collectively, appellees). Johnson asserted essentially two sets of claims. First, alleging that patient K.J. had ordered him not to disclose the patient's record to the Board, Johnson pled what he styled as an interpleader action in which he requested a declaratory judgment under the Uniform Declaratory Judgments Act (UDJA)[3] to resolve the "competing claims" to the records and to clarify whether he was required to produce them. Relatedly, Johnson sought injunctive relief restraining appellees from prosecuting a disciplinary action against him while his suit was pending.

---

[2] Where there has been a change in the interim, we have substituted the current officeholders. *See* Tex. R. App. P. 7.2(a).

[3] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

2

Second, Johnson alleged that appellees were violating his "due process rights" through their letters and administrative subpoena. Specifically, Johnson alleged that (1) the Board's March 26, April 17, and April 25, 2008 letters violated his "due process rights" by failing to adequately disclose the subject matter of the investigation and complaint; and (2) the administrative subpoena was outside the Board's statutory authority because it was a "fishing expedition" that exceeded the scope of the investigation reflected in the Board's prior letters. Johnson sought declaratory judgments that (1) "the [Board] letters of March 26, April 17, and April 25, 2008 [are] legally deficient communications from the Board in violation of Plaintiff's due process rights safeguarded by the Fourteenth Amendment to the U.S. Constitution, the Texas Constitution, and further declaring the investigation null and void under Texas law in the absence of the disclosure of the nature of the complaint and the scope of the investigation"; (2) "the [Board] purported investigation conducted in the absence of a bona fide complaint containing allegations supporting the contentions set forth in the [Board] letters of March 26, April 17, and April 25, 2008 [are] an action in excess of the [Board] powers and authorities"; (3) the investigative subpoena is "overbroad, illegal, and in excess of the powers and authorities of the [Board] and in contravention of the limited scope of the investigation" reflected in the Board's letters of March 26, April 17, and April 25, 2008; and (4) further declaring "the true scope" of the investigation and the "specific documents that the Court determines that are relevant to the Board's investigation." With this, Johnson requested a mandatory injunction to compel appellees to comply with "the disclosure mandates of Tex. Occ. Code Ann. § 154.053(a) and of the Board's own regulations 22 TAC § 179.3(5)," a permanent injunction under 42 U.S.C. § 1983 to restrain appellees' "due process" violations, and a preliminary

injunction restraining appellees from prosecuting any disciplinary proceedings while his suit was pending. In his petition, Johnson also requested a rule 176 protective order against the subpoena.

Appellees filed a plea to the jurisdiction asserting that Johnson's suit was barred by sovereign immunity, that his claims were not ripe, that he had failed to exhaust his administrative remedies, and that the district court lacked subject-matter jurisdiction to intervene in the Board's ongoing administrative proceeding. The Board also wrote Johnson advising him that it was initiating a separate investigation regarding his failure to comply with its initial subpoena. In response, Johnson sought a temporary restraining order against the investigation pending the district court's determination of appellees' plea to the jurisdiction. A hearing was held on Johnson's TRO request on August 14, 2008. At the hearing, Johnson's counsel acknowledged what counsel terms K.J.'s "newly conflicting views of reality on the ground" concerning whether the patient opposed disclosure of the medical records. The district court denied the TRO. On the following day, Johnson explains, he "voluntarily discontinued the interpleader part of the case regarding the priority of the claims of K.J. and of the Board," and produced the medical records called for in the subpoena.

On September 29, 2008, the district court granted appellees' plea to the jurisdiction without stating specific grounds, and dismissed Johnson's claims "without prejudice to his later seeking judicial review at the appropriate time." This appeal followed.

Johnson brings a single issue on appeal in which he argues that the district court erred in granting appellees' plea to the jurisdiction because the district court, not the Board, had exclusive jurisdiction over the subject matter of his claims; because his claims fall within exceptions to exhaustion-of-remedies requirements; and because his claims are ripe for adjudication.

As a threshold matter, the parties dispute whether, in light of Johnson's production of K.J.'s medical records, any of his claims concerning the investigative subpoena remain justiciable. Although Johnson concedes that he "voluntarily discontinued the interpleader part of the case regarding the priority of the claims of K.J. and of the Board," he asserts that a live controversy nonetheless remains concerning the scope of the subpoena vis-a-vis the grounds for the investigation as reflected in the Board's preceding letters. Johnson claims that he produced the records "under protest and with full reservation of rights and without waiving the outstanding issues before the Court." In support, Johnson has attached to his brief an affidavit from his counsel representing that, when producing the records, Johnson "reserved the right to seek the enforcement of any and all orders determining that the records must be returned, that only part of the records must be disclosed, or that the motion for protective order is granted." Appellees respond that any claims challenging the subpoena are now moot because Johnson has already acquiesced in producing the records the subpoena compelled him to produce. We agree that Johnson's claims regarding the subpoena are now moot.

If, at any stage of the legal proceedings, a judgment would have no practical legal effect on a then existing controversy, the case becomes moot. *Williams v. Huff*, 52 S.W.3d 171, 184 (Tex. 2001). Regardless of whether Johnson purported to produce the records under a "reservation of rights," it remains that he produced the records the subpoena called for. Consequently, none of his claims for declaratory and injunctive relief to restrain enforcement of the subpoena can have any practical effect. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (where claimant "produced a representative for deposition and thus complied with the trial court's discovery

5

order . . . there ceased to be a live controversy" regarding the discovery order). Stated another way, there remains at this juncture only a theoretical dispute regarding whether Johnson *could have been compelled* to produce the records, and no longer a live, justiciable controversy regarding whether he *can* be compelled to produce them, as necessary to provide a jurisdictional basis for his declaratory and injunctive claims attacking the subpoena. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).[4] Consequently, the district court properly dismissed those claims.

As for Johnson's remaining claims, our disposition of his appellate contentions is controlled by our recent opinion in *Rea v. State*, No. 03-08-00491-CV, ___ S.W.3d ___, ___ (Tex. App.—Austin July 16, 2009, no pet. h.). In *Rea*, we held that similar declaratory and injunctive claims seeking to restrain a Board disciplinary proceeding prior to an adjudicative hearing were not ripe for adjudication. *Id*. at ___.[5] The same analysis applies here. Consequently, we overrule Johnson's issue and affirm the district court's judgment of dismissal. *See* Tex. R. App. P. 47.1.

---

[4] Appellees do not object to our considering counsel's affidavit, which is not part of the appellate record. Indeed, regardless of whether we consider it, it has no impact on whether Johnson's claims regarding the subpoena remain justiciable.

[5] In fact, the same counsel represented both Drs. Rea and Johnson, and made virtually identical appellate arguments in both proceedings.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 24, 2009