Opinion issued May 26, 2005

     











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01298-CV




GARY W. GATES JR., AS NEXT FRIEND OF D.G. AND M.G., MINORS, Appellant

v.

FORT BEND COUNTY CHILD ADVOCATES, INC., LINDA SCHULTZ,
AND BONNIE MARTIN, Appellees




On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 01-CV-119502




MEMORANDUM OPINION
          Appellant, Gary Gates Jr., as next friend of D.G. and M.G., his minor sons (“the
Gateses”), appeals from a final summary judgment denying the Gateses’ motion for
partial summary judgment, granting the summary judgment motion of appellees, Fort
Bend County Child Advocates, Inc. (“FBCCA”), Linda Schultz, and Bonnie Martin
(together, “appellees”), and rendering a take-nothing judgment on all of the Gateses’
claims against appellees. We determine whether (1) the Gateses have raised a
meritorious appellate challenge to the summary judgment rendered on their claims for
breach of contract; (2) the trial court erred in rendering summary judgment on the
Gateses’ remaining claims on the ground of lack of duty; (3) the trial court erred in
failing to make the declarations that the Gateses had requested; and (4) the trial court
abused its discretion in denying the Gateses’ request for a continuance to take certain
depositions. We affirm.
Background
          FBCCA was a non-profit corporation founded in 1991 to work on behalf of
abused, neglected, and abandoned children in Fort Bend County. FBCCA ran four
programs under its corporate umbrella: (1) a Court-Appointed Special Advocates
(“CASA”) program for Fort Bend County, (2) a Children’s Advocacy Center
(“CAC”) for Fort Bend County, (3) Diligent Search, and (4) Family Assistance. Only
the first two programs are at issue in this case.
          FBCCA’s CAC, established in 1996, was established and operated pursuant to
chapter 264 of the Family Code. See Tex. Fam. Code Ann. §§ 264.401-.411
(Vernon 2002) (providing for establishment of CACs). This CAC’s goals included
minimizing the number of interviews of alleged child-abuse victims, enhancing
communications among investigators and agencies, facilitating abused children’s
timely and effective access to services, allowing for improved prosecution of child-abuse cases, providing victims and their families referrals and information, and
educating community professionals involved in child abuse. FBCCA’s CAC would
often perform child-abuse interviews pursuant to court order and at the request of
Texas Department of Family and Protective Services (“TDFPS”).
          FBCCA’s CASA program was also established and operated pursuant to
chapter 264 of the Family Code. See Tex. Fam. Code Ann. §§ 264.601-.613
(Vernon 2002) (providing for establishment of court-appointed volunteer advocate
programs). This CASA program’s mission was to advocate for the best interest of
children in the custody of Children’s Protective Services (“CPS”). Its volunteers
were assigned to act as guardians ad litem for children in CPS’s custody and also to
gather and to provide courts with information regarding abused children.
          A.G. was the daughter, and one of 13 children, of Gary and Melissa Gates. In
late January 2001, a school employee noticed a bruise on A.G.’s cheek. After A.G.
gave conflicting reports of how the bruise happened—A.G. may have indicated that
her father, her brother (D.G.), or a classmate caused or aggravated the bruise


—the
school contacted TDFPS, which removed A.G. from her classroom and took her to
FBCCA. Bonnie Martin, a forensic interviewer with CAC, interviewed A.G. about
the bruise. A.G. told Martin that another brother, M.G., had caused the bruise. 
Martin did not ask A.G. any body-inventory or sexual-abuse questions.
          TDFPS then requested that Mr. Gates allow it to interview his family members. 
Mr. Gates refused. Accordingly, within a matter of days, TDFPS filed in district
court a “petition in aid of investigation of a report of child abuse,” in an attempt to
obtain interviews of the Gates children and parents in support of the investigation of
the possible physical abuse of A.G. Schultz, FBCCA’s then-executive director, was
present at the hearing, though neither she nor FBCCA was a party to the proceeding. 
Mr. and Mrs. Gates and TDFPS agreed in open court that TDFPS would interview
Mr. and Mrs. Gates and their two sons, M.G. and D.G., and could then interview the
other Gates children if it chose. The Gateses alleged and presented summary-judgment evidence that Mr. and Mrs. Gates understood that the questioning would
relate only to the alleged physical abuse of A.G., that they did not know that TDFPS
would ask sexual-abuse or body-inventory questions during the court-ordered
interviews, and that they would not have agreed to the interviews had they known that
these questions would be asked. However, the record from the hearing, which was
also made part of the summary-judgment evidence, showed that the parties did not
mention what questions would be asked of M.G. and D.G. The hearing record also
showed that the parties agreed that neither Mr. nor Mrs. Gates would be allowed to
attend the interviews and that one of the Gateses’ counsel would be allowed to
observe the interview from an adjacent room. The trial court adopted the parties’
agreement as its order.
          The CAC conducted the court-ordered interviews of M.G. and D.G. at
TDFPS’s request in early February 2001.


 FBCCA admitted that the interviews’
purpose was “to discover the source of the bruise to [A.G.].” As part of the interview,
Martin also asked each boy body-inventory and sexual-abuse questions. That
particular aspect of Martin’s questioning lasted about five minutes with M.G. and
about two minutes with D.G. The Gateses alleged that both children were
uncomfortable with these questions; the summary-judgment evidence indicated that
at least D.G. was uncomfortable with these questions. D.G. asked toward the end of
his interview if his mother could be present, which request Martin denied. Pursuant
to the court’s order, the Gateses’ attorney, Mr. Gibson, sat in an adjacent interview
room from which he could both hear and see the interviews, including the sexual-abuse and body-inventory questions, by closed-circuit television. Mr. Gibson did not
try to interrupt the interviews or comment in any way about the interviews’ conduct
or the questioning format either during or right after the interviews.
          Nonetheless, in June 2001, about four months after the interviews, the Gateses
sued FBCCA for Martin’s having asked M.G. and D.G. the standard body-inventory
and sexual-abuse questions and for not having allowed their mother to be present
during the questioning. The Gateses did not list separate causes of action, but instead
alleged 17 duties that FBCCA breached, all of which appear to have concerned
Martin’s asking body-inventory and sexual-abuse questions, the mother’s not having
been allowed to be present at the interviews, and FBCCA’s not having revealed
during the hearing on TDFPS’s petition that it would ask body-inventory and sexual-abuse questions. The Gateses sought only money damages, not declaratory relief.
          FBCCA specially excepted to the Gateses’ petition on the grounds that the 17
duties did not exist under Texas law, the petition failed to state a viable cause of
action, and some of the allegations did not specify what actions of FBCCA
constituted a breach of duty. The trial court sustained FBCCA’s special exceptions
“to the 17 duties enumerated” in the Gateses’ petition and ordered them to “replead
their case as to statutory and/or common law causes of action.”
          After that order, the Gateses amended their petition no fewer than five times. 
FBCCA moved for summary judgment after many of those amendments. The
Gateses’ “live” petition at the time of summary judgment added Martin and Schultz
as individual defendants. The live petition asserted claims that appear to have been
based on the following actions: (1) Martin’s having asked M.G. and D.G. body-inventory and sexual-abuse questions; (2) their mother’s not having been allowed to
be present at the interviews; (3) FBCCA’s not having revealed during the hearing on
TDFPS’s petition that it would ask such questions or that unnamed mental-health
professionals had recently concluded that the children should not be interviewed; and
(4) FBCCA’s having shared the Gateses’ confidential information with unnamed
persons inside and outside of FBCCA’s corporate umbrella. The Gateses alleged the
following causes of action arising out of the four complained-of actions: (1)
violations of the Family Code’s “good faith/best interest standard,” (2) breaches of
fiduciary duty, (3) breach of contract “and agreement claims,” (4) “tortious
interference with familial rights,” and (5) negligence. The Gateses sought declaratory
relief and monetary damages.
          FBCCA filed a traditional motion for summary judgment and two supplemental
(traditional) motions for summary judgment, the last of which was joined by Martin
and Schultz and expressly incorporated all previous summary-judgment motions and
evidence. In the end, FBCCA asserted the following summary-judgment grounds: (1)
FBCAA enjoyed governmental immunity from suit; (2) Martin and Schultz enjoyed
absolute judicial immunity; (3) appellees lacked any duties toward the Gateses arising
out of any of the complained-of actions, including a lack of any fiduciary duties, a
lack of any duty arising from the parties’ courtroom agreement for TDFPS to conduct
the interviews, and a lack of a duty to protect the Gateses’ “due process rights with
their parents and . . . with their siblings” (also styled by the Gateses as tortious
interference with familial rights); (4) no private cause of action for damages existed
for the Gateses’ claim based on FBCCA’s allegedly unlawful operation of CAC and
CASA programs under its corporate umbrella; (5) the Family Code’s “best interest”
standard did not create a fiduciary duty or a private cause of action for damages; (6)
the Gateses could not recover personal-injury damages for breach of contract; and (7)
the Family Code allowed FBCCA to disclose confidential information internally, and
FBCCA revealed the Gateses’ confidential information to no external persons.


 The
Gateses also moved for traditional summary judgment, seeking declarations that (1)
FBCCA was illegally operating CAC and CASA programs under its corporate
umbrella and (2) the composition of the board of FBCCA’s CAC was unlawful. 
 
          Each side specially excepted to the other’s summary judgment motions or
responses, and both raised objections to the other’s summary-judgment evidence; the
trial court overruled each side’s special exceptions and objections. The trial court
denied the Gateses’ motion for partial summary judgment, granted appellees’ motion
for summary judgment, and rendered a take-nothing judgment against the Gateses. 
The Gateses’ motion for new trial was overruled by operation of law.
Summary Judgment
          In their first six issues, the Gateses challenge various aspects of the summary
judgment.
A.      Standard of Review
          Summary judgment under rule 166a(c) is proper only when a movant
establishes that there is no genuine issue of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food Mkts., Inc. v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to summary
judgment if the evidence disproves as a matter of law at least one element of each of
the plaintiff’s causes of action or if it conclusively establishes all elements of an
affirmative defense. Johnson, 891 S.W.2d at 644.
          To the extent that appellees may have sought summary judgment on the
pleadings, we note that “[s]ummary judgment based on a pleading deficiency is
proper if a party has had an opportunity by special exception to amend and fails to do
so, or files a further defective pleading.” Natividad v. Alexsis, Inc., 875 S.W.2d 695,
699 (Tex. 1994). “A review of the pleadings in such case is de novo, with the
reviewing court taking all allegations, facts, and inferences in the pleadings as true
and viewing them in a light most favorable to the pleader.” Id. “The reviewing court
will affirm the summary judgment only if the pleadings are legally insufficient.” Id.
B.      Unchallenged Grounds for Summary Judgment
          One of appellees’ grounds for summary judgment asserted that the Family
Code allowed FBCCA to disclose confidential information internally and that
FBCCA revealed the Gateses’ confidential information to no external persons. The
Gateses have not challenged this summary-judgment ground on appeal. Accordingly,
we must affirm the summary judgment to the extent that it rendered a take-nothing
judgment on any of appellants’ claims based on the allegation that FBCCA
improperly divulged confidential information to anyone. See Garcia v. Nat’l
Eligibility Express, Inc., 4 S.W.3d 887, 889 (Tex. App.—Houston [1st Dist.] 1999,
no pet.).
C.      Breach-of-Contract Claims
          Under their sixth issue, the Gateses assert that the trial court erred in rendering
summary judgment on their breach-of-contract claims.
          The Gateses pleaded that they were third-party beneficiaries of (1) FBCCA’s
“contract with local government to provide a service to the community and its
children”


 and (2) the agreement in court for TDFPS to interview the Gateses. The
Gateses alleged that FBCCA breached the latter agreement by asking them body-inventory and sexual-abuse questions when TDFPS had allegedly not revealed at the
hearing its intention to allow these types of questions. Appellees moved for summary
judgment against both of the Gateses’ breach-of-contract claims on the ground that
the Gateses could not recover personal-injury damages on breach-of-contract claims.
          On appeal, the Gateses’ sole challenge to the summary judgment rendered on
their two contract claims is: “Appellees assert that the Gateses are not entitled to
recover as third-party beneficiaries because the Gateses are seeking personal injury
damages. This assertion is inaccurate and cannot support a traditional motion for
summary judgment as Appellees have proffered no summary judgment evidence in
support of this assertion.” (Emphasis added.) This challenge is not meritorious
because it misunderstands the summary judgment ground, which presented a question
of law, not one of fact. The Gateses cite no authority that would address appellees’
matter-of-law summary judgment ground, and they offer no further argument.
          Accordingly, we overrule this portion of the Gateses’ sixth issue.
 
D.      Duty
          In their fifth issue, the Gateses assert that the trial court erred in rendering
summary judgment on the premise that appellees did not owe any duty to them under
any cause of action pleaded. We have already held that the Gateses (1) have waived
any challenge to the summary judgment rendered on any of their claims based on
disclosure of confidential information and (2) have failed to assert a meritorious
challenge to the summary judgment rendered on their claims for breach of contract. 
Accordingly, we are concerned in this discussion with only the following actions that
the petition alleged were tortious—whether framed as claims for negligence, breach
of fiduciary duty, violations of the Family Code’s “good faith/best interest standard,”
or “tortious interference with familial rights”:
1.Martin asked the Gateses body-inventory and sexual-abuse
questions.
 
2.FBCCA, whose representative was present at the court hearing at
which the interviews were ordered, did not reveal during that
hearing on TDFPS’s petition that it would ask such questions or
that unnamed mental-health professionals had recently concluded
that the children should not be interviewed.




          “[T]he existence of duty is a question of law for the court to decide from the
facts surrounding the occurrence in question.” Greater Houston Transp. Co. v.
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). In determining duty, a court should
consider “several interrelated factors, including the risk, foreseeability, and likelihood
of injury, weighed against the social utility of the actor’s conduct, the magnitude of
the burden of guarding against the injury, and the consequences of placing the burden
on the defendant.” Id. “Where no duty is owed as a matter of law, summary
judgment is proper.” Kanetzky v. Murphy, 862 S.W.2d 653, 657 (Tex. App.—Austin
1993, no writ) (citing Otis Eng’g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983)). 
Each of the Gateses’ causes of action appears to have sounded in tort and thus
contained duty as an element.



          The cited allegations related to TDFPS’s decision to interview M.G. and D.G.
as part of the investigation of the alleged physical abuse of A.G. and to Martin’s
questioning of M.G. and D.G. pursuant to that investigation. Although the Gateses
disputed appellees’ motives in asking the sexual-abuse and body-inventory
questions,


 one matter that was undisputed was that the questions that Martin asked
were standard ones in child-abuse investigations. For example, the Gateses’ own
summary-judgment proof—the oral deposition of Sandra Rosinski, a CPS program
director was deposed concerning the A.G. incident, albeit in a different suit—testified
that
the expectation that I have of the [FBCCA] CAC and what would be as
a standard interview and that—my expectation of the standard interview
is that you do ask those questions, the sexual abuse questions, and
[A.G.] and [another sibling] should have been asked those questions. 

She also testified that TDFPS expected “sexual” questions be asked of the Gateses
and that TDFPS expected that such questions would be asked of victims and family-member witnesses in every CAC interview. The Gateses also presented as summary-judgment evidence FBCCA’s answers to the Gateses requests for admission, in which
FBCCA admitted that TDFPS requested that Martin ask these particular questions of
M.G. and D.G. Similarly, appellees presented evidence that CPS had requested
comprehensive interviews of M.G. and D.G., meaning interviews covering potential
physical abuse, sexual abuse, and drug abuse. The Gateses also presented evidence
that TDFPS needed to interview A.G.’s siblings and mother in order to complete its
investigation of A.G.’s case. 
          Given this evidence, we disagree with the Gateses’ statement of the issue as
whether “a children’s advocacy center owes a duty to the children it serves . . . .” 
(Emphasis added.) Rather, the issue is whether these appellees had a duty, as part of
a child-abuse investigation, not to interview children whom the alleged victim had
indicated were witnesses and a duty not to ask those witnesses standard questions as
part of that investigation. We answer that question in the negative. The social utility
of both interviewing children whom an alleged child victim has indicated have
knowledge of the incident, as well as asking such standard, investigative questions
during child-abuse investigations, is great, compared to any discomfort that a witness
might feel at being interviewed or being asked those questions. See Phillips, 801
S.W.2d at 525. Moreover, the Family Code requires that TDFPS (and entities like
CACs, with which TDFPS contracts to aid in its investigations), make “a prompt and
thorough investigation of a report of child abuse or neglect . . . .” Tex. Fam. Code
Ann. § 261.301(a) (Vernon Supp. 2004-2005) (emphasis added). The Code allows
TDFPS to “by rule assign priorities and prescribe investigative procedures for
investigations” and provides that “[t]he primary purpose of the investigation shall be
the protection of the child.” Id. § 261.301(d) (Vernon Supp. 2004-2005). The Code
also requires CACs to “assess victims of child abuse and their families to determine
their need for services relating to the investigation of child abuse,” among other
matters. Id. § 264.405(1) (Vernon 2002). Disallowing a CAC from interviewing
implicated witnesses or asking them standard sexual-abuse questions in any child-abuse investigation—here, in effect, allowing the Gates parents to determine whether
their children could be interviewed or asked standard investigative questions—would
not serve the statutory purposes of a thorough investigation or of assessing the
victim’s needs pursuant to an investigation.
          For these reasons, we overrule the Gateses’ fifth issue. Given this holding, we
need not reach the Gateses’ second, third, fourth issues or the remainder of their sixth
issue.
Declaratory Judgment
          The Gateses filed their own motion for partial summary judgment, requesting
that the trial court declare the following matters:
1.[FBCCA] was and continues to field a multidisciplinary team that
was and is not properly appointed by the required governing
board. [FBCCA] has failed to meet the legislature’s required
standard by not being a properly governed multidisciplinary team. 
[FBCCA’s] failure to comply with the statutes of the State of
Texas resulted in Plaintiffs being asked improper, invasive, and
abusive questions of a sexual nature.
 
2.[FBCCA] has failed to properly establish and operate itself as a
[CAC] as required by the statutes of the State of Texas.

 
3.[FBCCA] and Schultz have unlawfully mixed funds, duties and
files between those individuals and departments who are charged
with investigation/law enforcement and those who are charged
with protecting the best interest of the children.
 
4.It is legally impossible for [FBCCA] to hold itself out as both a
[CASA program] as authorized by § 264.601, et seq., Tex. Fam.
Code, and as a [CAC] as authorized by § 264.401, et seq., Tex.
Fam. Code.

The Gateses also sought a declaration that appellees had “breached and/or waived all
rights of confidentiality.” The trial court denied appellant’s motion and did not make
any declarations in its final judgment. In their first issue, the Gateses argue that the
trial court erred in denying their motion for partial summary judgment and in failing
to make the requested declarations. 
          The purpose of a declaratory action is to establish existing rights, status, or
other legal relations. Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex.
1995); Republic Ins. Co. v. Davis, 856 S.W.2d 158, 164 (Tex. 1993). The
Declaratory Judgment Act (“DJA”) is “remedial” only. Bonham State Bank, 907
S.W.2d at 467. The DJA neither confers additional substantive rights upon parties,
nor confers additional jurisdiction on courts. Rush v. Barrios, 56 S.W.3d 88, 105
(Tex. App.—Houston [14th Dist.] 2001, pet. denied). 
          A declaratory judgment is appropriate only if there is a justiciable controversy
about the rights and status of the parties and the declaration will resolve the
controversy. Beadle, 907 S.W.2d at 467. “To constitute a justiciable controversy,
there must exist a real and substantial controversy involving genuine conflict of
tangible interests and not merely a theoretical dispute.” Bexar-Medina-Atascosa
Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass’n, 640
S.W.2d 778, 779-80 (Tex. App.—San Antonio 1982, writ ref’d n.r.e.); Chapman v.
Marathon Mfg. Co., 590 S.W.2d 549, 552 (Tex. Civ. App.—Houston [1st Dist.] 1979,
no writ). Texas courts do not have jurisdiction to render purely advisory opinions. 
Patterson v. Planned Parenthood of Houston & S.E. Tex., Inc., 971 S.W.2d 439, 443
(Tex. 1998). “An opinion is advisory when the judgment sought would not constitute
specific relief to a litigant or affect legal relations.” Coastal Conduit & Ditching, Inc.
v. Noram Energy Corp., 29 S.W.3d 282, 291 (Tex. App.—Houston [14th Dist.] 2000,
no pet.).
          The Gateses assert that the declarations that they requested—concerning
whether FBCCA could lawfully combine CAC and CASA programs under its
corporate umbrella and whether FBCCA’s CAC program had an illegally constituted
board


—involved justiciable interests because such declarations “relate directly to the
validity of Appellees’ claims to judicial and/or governmental immunity. Appellees
are not entitled to any immunity since Appellee [FBCCA] was unlawfully established
and functioning illegally.” Under their sixth issue, concerning whether the causes of
action that they asserted were viable, the Gateses also argue that their declaratory
requests present a justiciable controversy because “Appellants, like every other child
in Fort Bend County, are subject to possible future abuse by [FBCCA].”
          Assuming without deciding that the declarations that the Gateses sought were
somehow relevant to judicial or governmental immunity, we hold that the trial court
nonetheless did not err in not making the requested declarations because they would
not have resolved the parties’ controversy. We have already held that no duty existed
under any tort claim that the Gateses alleged. A determination of whether FBCCA
could properly operate both CAC and CASA programs under the same corporate
umbrella would not affect that holding or the fact that no duty existed. Accordingly,
the declarations that the Gateses sought “would not [have] constitute[d] specific relief
to a litigant or affect[ed] legal relations” and would thus have been advisory. See
Coastal Conduit & Ditching, Inc., 29 S.W.3d at 291 (holding that trial court did not
err in rendering summary judgment on declaratory-judgment cause of action, which
sought declaration that appellee had violated federal regulations, because appellate
court had already held, for unrelated reason, that appellant could not maintain
underlying negligence cause of action: “Rendering declaratory judgment that Entex
is in violation of either federal regulation cannot change the holding that . . . Coastal
Conduit cannot ever recover economic damages from Entex.”). Moreover, we note
that the Gateses did not allege that the CASA program of FBCCA was in any way
involved in the interviews that form the basis of their lawsuit. 
          We overrule the Gateses’ first issue. 
Continuance
          In their seventh issue, the Gateses assert that the trial court erred in denying
their repeated motions for continuance so that they could depose Martin, Schultz, and
Candace Heiser, FBCCA’s director, the affidavits of each of whom appellees offered
as summary judgment proof. The Gateses also assert that, because this error
prevented them from “cross-examin[ing] the affiants who offered summary judgment
evidence,” the trial court erred in overruling their objections to these three women’s
summary judgment affidavits.


 
          “Should it appear from the affidavits of a party opposing the motion [for
summary judgment] that he cannot for reasons stated present by affidavit facts
essential to justify his opposition, the court may refuse the application for judgment
or may order a continuance to permit affidavits to be obtained or depositions to be
taken or discovery to be had or may make such other order as is just.” Tex. R. Civ.
P. 166a(g); cf. Tex. R. Civ. P. 252 (“If the ground of such application [for
continuance] be the want of testimony, the party applying therefor shall make
affidavit that such testimony is material, showing the materiality thereof, and that he
has used due diligence to procure such testimony, stating such diligence, and the
cause of failure, if known . . . .”). We review the trial court’s ruling on a motion for
continuance under rule 166a(g) for abuse of discretion. J.E.M. v. Fidelity & Cas. Co.
of N.Y., 928 S.W.2d 668, 676 (Tex. App.—Houston [1st Dist.] 1996, no writ). In
determining whether the court abused its discretion, we consider, among other
criteria, the materiality of the discovery sought. Id.
          On May 10, 2002, the day after FBCCA filed its first summary judgment
motion, the Gateses noticed the depositions of, among others, Martin, Schultz, and
Heiser. Also on May 10, 2002, FBCCA moved to quash those depositions because
its summary-judgment motion “raises threshold issues of immunity that are relevant
to the Court’s subject matter jurisdiction. Because of these threshold issues of subject
matter jurisdiction, planning for depositions to occur prior to resolution of [the
summary judgment motion] is premature.” FBCCA’s summary-judgment motion was
set for submission on June 18, 2002. On June 10, 2002, the Gateses moved for a
continuance, so that they could depose Martin, Schultz, and Heiser. The Gateses
argued, “Equity requires that Plaintiffs be entitled to fully discover their case before
summary judgment should be considered by the Court especially in light of
Defendant’s reliance on the testimony of fact witnesses Bonnie Martin, Candace
Heiser and Linda Schultz.”


 At the hearing on their continuance motion, the Gateses
added that the deponents “are fact witnesses . . . . They’re part of the company, they
know what their policies are, they know what their protocol and policy which forms
the duties [sic] . . . .” The Gateses also argued, “[W]hat we want to discover is all the
machinations that went into the decision to put these children in the room, isolate
them from the mother, isolate them from the ad litem and the decision to do the sex
questions.”
          FBCCA responded that the Gateses had not stated how these potential
depositions were material to their case; that the depositions were unnecessary because
its summary-judgment motion was based on threshold issues of immunity and duty;
that FBCCA had already answered significant written discovery; that FBCCA’s
motion was, at least to some extent, a challenge to the pleadings and thus assumed the
validity of the live petition’s factual allegations; and that, because the Gateses’
attorney was present at the interviews, “the fact that he has not sworn out an affidavit
in support of [the continuance motion] does not justify a continuance of the hearing.” 
The trial court verbally denied the Gateses’ continuance motion.
          The Gateses then filed two amended motions for continuance, in which they
reasserted the same allegations as they had in their first continuance motion, but
added that the deposition testimony was necessary because appellees had at that time
asserted good-faith-immunity defenses. The Gateses also filed a “motion for
qualified immunity discovery,” in which they sought to depose the three affiants on
matters relating to good faith. The Gateses’ written continuance motion offered no
other explanation of why these affiants’ depositions were necessary on what appellees
claimed were the threshold issues of duty and immunity. The trial court denied the
Gateses’ amended continuance motions in writing.
          We hold that the trial court did not abuse its discretion in denying the Gateses’
motions for continuance. First, appellees withdrew their qualified-immunity defense
in response to the Gateses’ motion for qualified-immunity discovery, and, in the final
summary-judgment hearing, appellees withdrew any summary-judgment ground
based on good-faith qualified-immunity. Once appellees had abandoned their
qualified-immunity summary-judgment grounds, the principal rationale that the
Gateses had offered in their written continuance motions as to the depositions’
necessity no longer applied, and the trial court would not have abused its discretion
if it so concluded. Second, the trial court would not have abused its discretion if it
concluded that the other specific materiality argument that the Gateses made—that
they needed to explore appellees’ motivations for asking M.G. and D.G. these
questions—was irrelevant to resolving the summary judgment’s governmental
immunity and duty grounds. As for the latter ground, because all evidence indicated
that the complained-of questions were a standard part of abuse investigations (and the
Gateses did not complain that they needed a continuance to explore whether such
questions were standard in abuse investigations), the trial court would not have
abused its discretion if it concluded that it was irrelevant what motivated appellees
to ask these questions of M.G. and D.G., but not A.G., in this particular case. 
          For these reasons, we hold that the trial court did not abuse its discretion in
denying the Gateses’ motions for continuance. Accordingly, we overrule the Gateses’
seventh issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Tim Taft
                                                                        Justice
 
Panel consists of Justices Taft, Alcala, and Higley.