COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THE CITY OF SAN ANTONIO, | | No. 08-10-00204-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 166th District Court |
| | § | |
| JAMES DIEHL, | | of Bexar County, Texas |
| | § | |
| Appellee. | § | (TC # 2008-CI-05948) |

**O P I N I O N**

This case addresses whether line of duty payments made to an injured police officer may be later recouped from his paycheck once he has received all benefits paid pursuant to workers' compensation law. Many facts are stipulated, including compensability and the amount of temporary income benefits (TIBs) paid. The parties agree that a self-insured may not recoup payments made for TIBs. They disagree whether the City may recoup line of duty pay to offset for payment of compensation benefits.

**FACTUAL SUMMARY**

This appeal originated with two separate lawsuits, both filed by James Diehl, an employee of the San Antonio Police Department. Diehl sustained a compensable on-the-job injury on July 15, 2007. He returned to full duty on January 4, 2008.

The City of San Antonio is self-insured for workers' compensation purposes. During Diehl's recovery, the City paid him the maximum weekly benefits to which he was entitled -- $674 per week for a total of $7,462.31. This amount was calculated from Diehl's average weekly wage of $1,326.43. Diehl also received line of duty pay pursuant to Section 143.073 of

the Texas Local Government Code. The line of duty pay was in an amount equal to his full salary which encompasses base pay and longevity. Diehl was paid $962.77 per week for the 11.57 weeks he was completely off work for a total of $11,140.64. Between the TIBs and the line of duty pay, Diehl received more than 100 percent of his salary. One can readily ascertain the dispute. "Average weekly wage" exceeds base pay and longevity because the former considers overtime and the latt1er does not.

## THE STATUTES

Because the City is a self-insured municipality, it must pay its employees injured on the job a percentage, generally 70 percent, of their pre-injury wages while they recover from their injuries. TEX.LAB.CODE ANN. § 408.103 (West 2006). Here, the City retains a third-party administrator to process and pay the City's workers' compensation claims.

Section 143.073 of the Texas Local Government Code requires the City to pay police officers or firefighters their full salary when they suffer job related injuries.[1] TEX.LOC.GOV'T CODE ANN. § 143.073 (West 2008). However, Section 504.051 of the Texas Labor Code provides:

**§ 504.051. Offset Against Payments for Incapacity**

(a) Benefits provided under this chapter shall be offset:

(1) to the extent applicable, by any amount for incapacity received as provided by:

(A) Chapter 143, Local Government Code; or

(B) any other statute in effect on June 19, 1975, that provides for the payment for incapacity to work because of injury on the job that is also covered by this chapter; and

---

[1] Section 143.073(a) states: A municipality shall provide to a fire fighter or police officer a leave of absence for an illness or injury related to the person's line of duty. The leave is with full pay for a period commensurate with the nature of the line of duty illness or injury. If necessary, the leave shall continue for at least one year. TEX.LOC.GOV'T CODE ANN. § 143.073(a).

(2) by any amount paid under Article III, Section 52e, of the Texas Constitution, as added in 1967.

(b) If benefits are offset, the employer may not withhold the offset portion of the employee's wages until the time that benefits under this chapter are received.

(c) If an employee's wages are offset, the employee and employer shall contribute to the pension fund on the amount of money by which the employee's wages were offset. An employee's pension benefit may not be reduced as a result of the employee's injuries or any compensation received under this chapter unless the reduction results from a pension revision passed by a majority vote of the affected members of a pension system.

TEX.LAB.CODE ANN. § 504.051 (West 2006). The purpose of Section 504.051 was to eliminate double dipping while ensuring that the officer's pension is not negatively affected. The interplay of these statutes has been addressed by the San Antonio Court of Appeals. *The City of San Antonio v. Vakey*, 123 S.W.3d 497 (Tex.App.--San Antonio 2003, no pet.).

### *CITY OF SAN ANTONIO v. VAKEY*

The City paid line of duty pay equal to Vakey's full pay for one year pursuant to Section 143.073 of the Local Government Code. *Id*. The City also paid Vakey temporary income benefits in accordance with the workers' compensation statutes. *Id*. at 499. After Vakey returned to work, the City began making deductions from his paycheck. *Id*. Vakey obtained a temporary restraining order preventing the City from making any further deductions. *Id*. The City argued that overpayments to Vakey were overpayments of workers' compensation benefits. *Id*. at 499. In upholding the injunction, the Fourth Court of Appeals construed Section 504.051 as follows:

> Section 504.051 permits the City to offset the amounts paid for temporary income benefits under the workers' compensation statutes by the amounts paid for line of duty pay under section 143.073. *See* TEX.LAB.CODE ANN. § 504.051 (Vernon 1996). **In applying the offset, the amount paid under section 143.073 is reduced, not the workers' compensation benefits.** *Texas Workers' Compensation Commission*, Appeal No. 931084, 1994 WL 20165 (Jan. 12, 1994).

*Vakey*, 123 S.W. 3d at 500 [Emphasis added]. The court continued by noting that if the City failed to make the offset by reducing the amount paid pursuant to Section 143.073, "the question becomes whether the City can later reduce an employee's wages to recoup the overpayment." The court then answered the question in the affirmative:

> Section 504.051(b) states, 'If benefits are offset, the employer may not withhold the offset portion of the employee's wages until the time that benefits under this chapter are received.' *See* TEX.LABOR CODE ANN. § 504.051(b)(Vernon 1996). **This appears to permit an employer to withhold wages on a later date after benefits are received**, 'if benefits are offset.'

*Id*. at 500.

Diehl takes issue with the *Vakey* decision, complaining that it "incorrectly determined that the offset is to the line of duty mandated 'full pay' not the workers' compensation benefit." He then directs our attention to conflicting decisions from other courts, as well as an inconsistent prior decision from the Fourth Court of Appeals. But this case was transferred to us from the San Antonio Court of Appeals by virtue of the Supreme Court's docket equalization plan and we must apply the precedent of that court. TEX.GOV'T CODE ANN. § 73.001 (West 2005); TEX.R.APP. P. 41.3.

## THE LAWSUITS

In Lawsuit #1, Diehl sought a restraining order against the City of San Antonio to prevent it from making further deductions from his paycheck as reimbursement for payments made to Diehl arising from an on-the-job injury. The City filed a counterclaim seeking a declaratory judgment that it was entitled to deduct overpayments of "line of duty" pay from Diehl's wages after he returned to work. In Lawsuit #2 Diehl sought judicial review of the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) Appeals Panel decision. In response, the City filed an answer and a plea to the jurisdiction. In its plea, the City claimed that

Diehl lacked standing because: (1) he was not aggrieved by the TDI-DWC decision; and (2) the suit did not present a justiciable controversy. In its answer, the City re-asserted its claim that it was entitled to recoup overpayments of "line of duty" pay made to Diehl while he was absent from work due to injuries sustained from his on-the-job injury. These two cases were consolidated and the parties entered into a Rule 11 Agreement whereby the City agreed not to deduct any additional amounts of money from Diehl's wages until the parties had exhausted all appeals in this case.

## DENIAL OF THE PLEA TO THE JURISDICTION

In Issue One, the City argues that the trial court erred in denying its plea to the jurisdiction because Diehl was not aggrieved by the TDI-DWC final decision and therefore had no standing to appeal that decision. We agree.

On November 7, 2007, the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) held a benefit review conference to mediate a resolution of the dispute between Diehl and the City. When the parties were unable to reach an agreement, a contested case hearing was scheduled for December 19, 2007. The hearing was later reset and held on April 7, 2008. The hearing officer rendered the following decision which was adopted by the TDI-DWC Appeals Panel on July 21, 2008:

> The Self-Insured is not entitled to reduce the Claimant's income benefits by the amount paid under Chapter 143, Local Government Code, pursuant to TEXAS LABOR CODE ANN. § 504.051. The Self-Insured is not entitled to reduce the Claimant's income benefits due to an overpayment under Chapter 143, Local Government Code, and the Claimant is entitled to the full amount of TIBs owed for the period in which he received line of duty pay under TEX.LOC.GOV'T CODE § 143.073 up to the date he returned to work full duty (January 4, 2008) subject to TEXAS LABOR CODE ANN. § 408.061(a) and (g). The Division does have jurisdiction to determine if the Employer is entitled to reduce or suspend the Claimant's post-injury earnings in order to recoup an overpayment of workers' compensation benefits. The Employer is not entitled to reduce or suspend the Claimant's post-injury earnings to recoup an overpayment of workers'

compensation benefits, if any. [T]he Self-Insured is not entitled to reduce the Claimant's income benefits by the amount paid under Chapter 143, Local Government Code, pursuant to TEXAS LABOR CODE ANN. § 504.051. The Division does not have jurisdiction to make a determination regarding the Employer's off set of Claimant's 'line of duty' benefits paid, pursuant to TEX.LOC.GOVN'T CODE § 143.07[3]. The Claimant did have disability resulting from an injury sustained on July 15, 2007 beginning July 16, 2007 and continuing through January 3, 2008.

On August 28, 2008, Diehl appealed the TDI-DWC Appeals Panel decision to the district court and the City filed a plea to the jurisdiction. The court's final judgment included a statement that it had jurisdiction over the subject matter and the parties, effectively overruling the City's plea.

### *Standard of Review*

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of a cause of action. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see Texas Department of Transp. v. Jones*, 8 S.W.3d 636, 637-38 (Tex. 1999). In asserting the plea, the plaintiff bears the burden to allege facts affirmatively proving that the trial court has subject matter jurisdiction. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

In deciding a plea to the jurisdiction, the reviewing court considers only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554-55. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the court considers relevant evidence by the parties when necessary to resolve the jurisdictional issues raised. *Texas Department of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228.

### *Analysis*

Only a party that has exhausted all its administrative remedies and that is aggrieved by a final decision of the appeals panel may seek judicial review. TEX.LAB.CODE ANN. § 410.251 (West 2006). A party is aggrieved only when the loss resulting from the final decision is actual and immediate. *Insurance Company of the State of Pennsylvania v. Orosco*, 170 S.W.3d 129, 133 (Tex.App.--San Antonio 2005, no pet.). The future defense of a personal injury lawsuit is not an actual and immediate loss. *See Orosco*, 170 S.W.3d at 133 (the possibility of a future loss is not an actual and immediate loss).

Here, the TDI-DWC, determined that Diehl was entitled to receive workers' compensation benefits, did receive such benefits, and that there were no overpayments of those benefits. The Division's decision did not require Diehl to pay any money nor did it authorize the City to recoup funds. In fact, it could not have done so, as the panel duly noted. Therefore, Diehl was not aggrieved by the Appeals Panel decision and lacked standing to appeal. *See In re Texas Mutual Insurance Company*, 331 S.W.3d 70 (Tex.App.--Eastland 2010, orig. proceeding). Because the trial court erred in denying the City's plea to the jurisdiction, we sustain Issue One. Our disposition of Issue One renders it unnecessary to consider Issue Two.

## THE CITY'S COUNTERCLAIM

In response to Lawsuit #1, the City filed a counterclaim seeking a declaratory judgment that it was allowed to recoup overpayments of line of duty pay once Diehl returned to full active duty. The trial court denied the City's counterclaim "in its capacity as employer." In other words, the trial court denied the City's counterclaim as it pertained to the City's ability to recoup "line of duty" payments.[2] Presumably, this decision was based on the fact that the trial court

---

[2] The City of San Antonio is self-insured and therefore wears two hats - one as an employer and one as an insurer. The City makes line of duty payments in its capacity as Employer. But workers' compensation payments are made by a third party administrator in the City's capacity as Self-Insured.

found overpayments of workers' compensation benefits, a determination that the trial court lacked jurisdiction to make.

### *Declaratory Judgment*

A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id*., *quoting Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Protection Ass'n*, 640 S.W.2d 778, 779-80 (Tex.App.--San Antonio 1982, writ ref'd n.r.e.). A trial court has the discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties. *Id*. at 468. But a trial court may refuse to render or enter a declaratory judgment or decree if it would not terminate the uncertainty or controversy giving rise to the proceeding. TEX.CIV.PRAC.&REM.CODE ANN. § 37.008 (West 2008).

### *Analysis*

The City construes *Vakey* to mean that all payments above and beyond Diehl's full salary are necessarily overpayments of line of duty pay. This appears to be a logical conclusion. It is clear from *Vakey* that workers' compensation benefits are paid first, and the difference between the TIBs and the employee's full salary is supplemented by line of duty pay. *See Vakey*, 123 S.W.3d at 499-500.

Diehl responds that line of duty pay is statutorily mandated, and that it must be paid, period. He directs our attention to Section 408.105:

**§ 408.105. Salary Continuation in Lieu of Temporary Income Benefits**

(a) In lieu of payment of temporary income benefits under this subchapter, an employer may continue to pay the salary of an employee who sustains a compensable injury under a contractual obligation between the employer and employee, such as a collective bargaining agreement, written agreement, or policy.

The City argues that it has no salary continuation plan. Indeed, it paid both TIBs and salary. Instead, it has always had a policy to pay its police officers and firefighters not only full workers' compensation benefits but also full line of duty benefits while those persons are absent from work due to on-the-job injuries. It also has a policy to recoup those overpayments when the police officers and firefighters return to work. Diehl was aware of this policy. Ricardo G. Granado, an employee of the City's human resources department, offered the following testimony:

Q. To your knowledge, has there been a policy of the City of San Antonio to pay not only full workers' compensation benefits but also pay the full line-of-duty benefits, in other words full base pay?

A. Yes, sir, that is the policy.

Q. And how long has that been the policy of the City of San Antonio?

A. It's my understanding it's been the policy for at least 20 years is my understanding.

Q. All right. Now, whenever the city makes these excess payments of line-of-duty pay or benefits, let's say, in excess of the officer's full regular duty -- regular salary, preinjury salary, does the city intend to recoup those excess payments whenever they're made?

A. Yes, sir, we do.

Q. All right. And is it your department that recoups those excess payments?

A. Yes, sir, it is.

.      .      .

Q. Now, tell us your understanding of why the City of San Antonio intentionally overpays benefits, line-of-duty pay we say, but benefits to police officers rather

than just paying them the 30 percent line of duty above the workers' compensation benefits. That's really all the law says we owe. But why does the city -- why does the city overpay in the first place?

A. Right. It's my understanding the reason that the overpayment is made is to assist officers and fire fighters where those instances their deductions are in excess of that 30 percent. It can be for various reasons. Some -- of course the big one is child support. However, there are other deductions that an officer or fire fighter may have which will increase and decrease.

Q. And would put them over that amount of 30 percent?

A. That is correct.

.        .        .

Q. And I believe you say that's been the practice for 20 years or so?

A. Yes, sir, that is my understanding.

Diehl also testified about the policy:

[Direct Examination]

Q. Okay. In regard to payments that you received, are you familiar with any type of policy of the City of San Antonio where they paid both types of benefits in order to help with any deductions that may be from an officer's check?

A. No.

Q. Have you ever been told about any such policy?

A. No.

.        .        .

[Cross Examination]

Q. All right. Now, we had said or mentioned to the court awhile ago that a lot of officers have monthly deductions. Are you aware of that fact, that quite a few police officers have monthly deductions from their bi-weekly paycheck?

A. As an example --

Q. An example, yourself. Do you have monthly deductions?

-10-

A.  Association dues.

Q.  All right.  Child support?

A.  Child support, yes, sir.

.    .    .

Q.  Okay.  Now, if you had only received 30 percent of your regular pay you would have had a problem meeting these deductions, would you not, I mean financially?

A.  Yes, sir.

Q.  All right.  So it was a benefit to you if you received a full -- the full line-of-duty pay, was it not?

A.  Yes.

.    .    .

Q.  And you were aware that you were going to -- that the city intended to recoup those overpayments from you, were you not?

A.  I knew that they were going to recoup something.

The City's policy prevented officers from encountering hardships based on automatic deductions from their pay checks.  But it did not prohibit the City from recouping those overpayments at a later date.

Finally, we address the meaning of Section 504.051 of the Labor Code.  Subsection (a) provides that "[b]enefits provided under this chapter" shall be offset by "any amount for incapacity received as provided by Chapter 143, Local Government Code . . . .  This provision of the Labor Code deals with workers' compensation and thus "benefits" can only refer to workers' compensation benefits.  Subsection (b) provides that if benefits are offset, the employer cannot withhold the employee's "wages" until the workers' compensation benefits are received.  And subsection (c) clarifies that wages mean salary because it directs pension contributions based on

-11-

those wages. As the City suggests, this section ensures that an employee's pension benefit may not be reduced just because the line of duty pay is reduced by virtue of an offset. TEX.LAB.CODE ANN. § 504.051. We sustain Issues Three and Four.

We reverse the judgment of the court below. We render judgment in favor of the City that overpayments to Diehl are line of duty payments which may be recouped only to the extent that Diehl receives 100 percent of his full salary.

April 25, 2012                    _____
                                  ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.