

# NUMBER 13-13-00395-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

HILL COUNTRY ESTATES
HOMEOWNERS ASSOCIATION
AND COVERED BRIDGE PROPERTY
OWNERS ASSOCIATION, INC.,                    Appellants,

v.

GREG GUERNSEY AND
THE CITY OF AUSTIN,                          Appellees.

## On appeal from the 250th District Court
## of Travis County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

By six issues, which we consolidate into one, appellants, Hill Country Estates

Homeowners Association ("Hill Country") and Covered Bridge Property Owners

Association, Inc. ("Covered Bridge") appeal the trial court's granting of a plea to the jurisdiction filed by appellees, the City of Austin ("Austin" or "the City") and Greg Guernsey, the City's Planning and Development Review Department's Director. We affirm in part and reverse and remand in part.

## I. BACKGROUND[1]

The Texas Local Government Code provides that a municipality may regulate zoning within its city limits and outlines various procedures that a municipality must follow in its regulation. *See generally* TEX. LOC. GOV'T CODE ANN. §§ 211.001–.017 (West, Westlaw through 2013 3d C.S.). In Austin, zoning uses are regulated by the Land Development Code (LDC). *See* AUSTIN, TEX., LAND DEV. CODE, Title 25 (2015), *available at* https://www.municode.com/library/tx/austin. The LDC gives the director of the Planning and Development Review Department the authority to "determine the appropriate use classification for an existing or proposed use or activity." *Id.* § 25-2-2(A).

In 2007, PromiseLand Church West, Inc. ("the Church") sought to develop a 53-acre project on Highway 71 in Austin to build a chapel, multipurpose building, and an outdoor amphitheater. The area of land for the project is designated "rural residential," which "may be applied to a use in an area for which rural characteristics are desired or an area whose terrain or public service capacity require low density." *Id.* § 25-2-54. Religious assembly use is a civic use that is: "regular organized religious worship or

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

2

religious education in a permanent or temporary building. The use excludes private primary or secondary educational facilities, community recreational facilities, day care facilities, and parking facilities. A property tax exemption is prima facie evidence of religious assembly use." *Id.* § 25-2-6(B)(41).

Hill Country and Covered Bridge are residential neighborhood associations in the area surrounding the Church's construction site, and both opposed the Church's request to build an outdoor amphitheater. Hill Country and Covered Bridge relied on statements made in the press that the Church's proposed amphitheater would be used for outdoor entertainment events, including live music performances, concerts, ballets, graduations, and theatrical performances. Hill Country and Covered Bridge opposed the Church's amphitheater proposal on grounds that such uses did not comport with the religious assembly use definition.

On December 17, 2008, Carl Conley, a licensed professional engineer who represented the Church, wrote to Guernsey, the City's planning and development review director, about the concerns over the proposed amphitheater. The letter stated the following:

> Thank you for meeting with me today to discuss whether an outdoor amphitheater is considered an accessory use[2] to an overall religious assembly use under RR or SF-1 zoning.

---

[2] An accessory use is a use that:

(1)     Is incidental to and customarily associated with a principal use;
(2)     Unless otherwise provided, is located on the same site as the principal use; and
(3)     May include parking for the principal use.

AUSTIN, TEX., LAND DEV. CODE, § 25-2-891 (2015).

3

The attached Conceptual Site Plan shows the overall project, including the primary church buildings and the outdoor Amphitheater. The church buildings include a typical indoor auditorium for 3500 seats. This indoor facility will be used for various religious assembly activities including worship services, weddings, funerals and education and musical presentations. This facility would also be available for non-religious non-profit civic uses such as neighborhood meetings, boy scout/girl scout meetings, school graduations, public meetings, etc. Again, these uses would be for non-profit activities. Like most churches, they may charge a nominal fee to the users to cover setup, clean up, utilities, and administrative and other operational expenses. There may be some activities that would include a fee that would be used to provide benefit to an individual or group that had a special emergency need (i.e. a family whose house burned down) or for some charitable organizations. All of these are typical of the use of a church facility. The church would not typically provide a venue for commercial "for profit" organizations.

The amphitheater would be used for the exact same type activities as the indoor auditorium but in an outdoor setting. This would be on a "weather permitting" basis while taking advantage of the natural environmental surroundings. As we discussed, the use of the amphitheater (along with any other use on the property) would be subject to all of the City's ordinances, including sound levels at the property boundaries. The church would also entertain the concept of a voluntary restrictive covenant that would help identify/clarify specific uses that are not [permitted] under the proposed religious assembly use.

The church has met with the adjoining neighborhood representatives and [has] offered to restrict uses of the amphitheater, including dates, times and incorporate sound attenuation design techniques, in order to assure the compatibility with the adjoining residential uses. PromiseLand Church will continue to work with the neighbors even after any permits are issued to work toward being a good neighbor in the surrounding community.

Please let me know if you need anything else to help you in your determination as to whether the amphitheater is an accessory use to the primary use of religious assembly.

Thanks for your consideration on this very important issue for this church.

On December 23, 2008, Guernsey responded to Conley with the following email:

I have reviewed your letter and attachment. Since the worship building and the outdoor amphitheater are both being primarily used for religious assembly uses, I don't see a problem with these two facilities co-locating on

4

the property.   I understand that the educational and musical presentations will be limited in scope and will be subordinate to the primary religious assembly use.   I also understand the church will be compliant with all applicable City Codes and ordinances, including the noise ordinance.

If the primary use of one or both of the facilities does change from a religious assembly use to an outdoor entertainment or an indoor entertainment use, a zoning change may be required.

On July 6, 2011, the Church applied for a site plan permit to begin construction on the project, including the amphitheater, and the City approved the application on October 12, 2011.   The application noted that the construction site was "subject to [a] Restrictive Covenant . . . which addresses land use restrictions, shared parking and traffic management."   The restrictive covenant entered into by the Church and the City on October 2, 2011 provided for the following restrictions and limitations for the church buildings and outdoor amphitheater:

A.  Religious Assembly Use will be permitted (as defined in the Austin Land Development Code), including such uses as:

1.  Worship services;
2.  Musical or theatrical performances;
3.  Weddings; and
4.  Funerals

B.  Customary and incidental accessory uses will be permitted, including such uses as:

1.  Educational presentations;
2.  Neighborhood meetings;
3.  School graduations;
4.  Public meetings; and
5.  Other civic or non-profit group meetings

C.  Religious Assembly Use may include occasional charitable events (including concerts and performances) for the benefit of an individual or family in need or for a charitable organization or charitable cause.

D. Except for occasional charitable events under Paragraph C, above, ticketed events may charge only nominal fees to cover utilities, maintenance, and other administrative and operational expenses.

E. The buildings and outdoor amphitheater will not be used for commercial, for-profit events.

F. The outdoor amphitheater is subject to all applicable City ordinances.

G. The restrictions in this Article I are imposed as conditions to Site Plan No. 2011-0185C and apply to the extent that an outdoor amphitheater remains part of the principal religious assembly use.

H. The restrictions in this Article I shall be interpreted consistent with all applicable local, state, and federal laws, including but not limited to constitutional requirements.

On October 21, 2011, representatives from Hill Country filed an administrative appeal with the City regarding the City's use determination of the Church site. Specifically, the appeal challenges the City's interpretation of "religious assembly use" to include the Church's proposed outdoor amphitheater. On October 27, 2011, an attorney for the City rejected Hill Country's appeal and stated that the appeal was untimely because it was not filed within twenty days from the City's use determination by Guernsey on December 23, 2008.

On December 12, 2011, counsel for Hill Country sent written correspondence to the City contesting the City's October 27, 2011 letter. Hill Country argued that its appeal did not relate to Guernsey's December 23, 2008 email, but rather to the City's use interpretations and determinations made in the October 2, 2011 restrictive covenant. Hill Country requested that the City forward its appeal to the Board of Adjustment.

On December 30, 2011, the City responded to Hill Country's letter and reasserted that Hill Country's appeal was time-barred. Particularly, the City noted that the language

in the restrictive covenant merely clarified Guernsey's December 23, 2008 use determination, did not contradict it, and did not permit non-religious assembly use, unless such use was "accessory to the principal use of religious assembly." The City further noted that "to the extent an accessory use of the amphitheater exceeded that scope, enforcement would be appropriate regardless of whether the applicant had violated a term of the covenant." Finally, the City maintained its position that absent "clearer requirements" from the code of ordinances, it would treat Guernsey's December 23, 2008 email as an "appealable decision."

Hill Country and Covered Bridge eventually filed suit against Guernsey, in his official capacity, and the City seeking: (1) declaratory and injunctive relief against Guernsey for his ultra vires acts; (2) mandamus to require Guernsey to forward Hill Country's appeal to the Board of Adjustment; (3) declaratory and injunctive relief against the City for violation of Hill Country and Covered Bridge's due process rights; and (4) declaratory and injunctive relief against the City declaring that its ordinances regulating land use determinations and appeal are impermissibly vague and thereby void.

Guernsey and the City filed a plea to the jurisdiction and asserted that the trial court lacked subject-matter jurisdiction because: (1) Hill Country and Covered Bridge lack standing; (2) the trial court's subject-matter jurisdiction in this case is conferred only upon judicial review of a decision by the Board of Adjustment; (3) Guernsey's complained-of actions are discretionary acts protected by governmental immunity; (4) Hill Country and Covered Bridge's claims are moot and not ripe for review; and (5) Hill Country has no property interest to assert a due process claim. The trial court granted Guernsey and the City's plea, and this appeal followed.

7

## II.     PLEA TO THE JURISDICTION

By one consolidated issue, Hill Country and Covered Bridge assert that the trial court erred in granting Guernsey and the City's plea to the jurisdiction.

### A.  Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit.  *Bland Ind. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).  Subject-matter jurisdiction is essential to a court's power to decide a case.  *Id.* 554–55.  Whether a court has jurisdiction is a question of law that is reviewed de novo.  *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue.  *City of Elsa*, 325 S.W.3d at 625.

We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent.  *Miranda*, 133 S.W.3d at 226.  If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend.  *Id.* at 226–27.  If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend.  *Id.* at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do.  *Id.* at 227.   If the evidence

8

creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228.

### B. Hill Country and Covered Bridge's Claims

Hill Country and Covered Bridge allege the following in their First Amended Petition and Application for Temporary Injunction: (1) Guernsey's actions, including making the "religious assembly use" determination and denying Hill Country's request for appeal, are without legal authority, ultra vires, and/or void; (2) Guernsey and the City violated Hill Country and Covered Bridge's due process rights of notice and opportunity to be heard regarding the religious assembly use determination, the Site Plan, the terms of the restrictive covenant, and the denial of Hill Country's request for appeal and public hearing before the Board of Adjustment; and (3) the City's ordinances or code provisions are vague. Hill Country and Covered Bridge further allege that Guernsey and the City's actions will increase "traffic, noise, and disturbance relating to the construction and use of the outdoor [amphitheater] to the detriment of the [Hill Country and Covered Bridge] neighborhoods." Finally, Hill Country and Covered Bridge also sought mandamus relief against Guernsey to "require him to follow the law and perform his non-discretionary duties," including forwarding Hill Country's appeal.[3]

---

[3] The remainder of the mandamus arguments relate to Hill Country and Covered Bridge's ultra vires claims against Guernsey.

9

## C. Discussion

### a. Ultra Vires Claims Against Guernsey

We first examine whether Hill Country and Covered Bridge's ultra vires claims against Guernsey properly invoke the subject-matter jurisdiction of the trial court.[4]

Absent waiver by the Legislature, sovereign and governmental immunity generally deprive courts of subject-matter jurisdiction over suits against the State, its agencies, or officers or employees acting within their official capacity. *See Texans Uniting for Reform & Freedom v. Saenz*, 319 S.W.3d 914, 920 (Tex. App.—Austin 2010, pet. denied) (internal citation omitted). One exception to immunity, however, is an ultra vires action. To fall within this exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 (Tex. 1991). Thus, ultra vires suits do not seek to alter government policy but rather to enforce existing policy. *Heinrich*, 284 S.W.2d at 372.

### 1. Use Determination of the Church Project

Hill Country and Covered Bridge's ultra vires claims are two-fold. The first deals with Guernsey's use determination providing that the Church's outdoor amphitheater

---

[4] Hill Country and Covered Bridge sought injunctive relief relating to Guernsey's use determinations and his refusal to forward Hill Country's appeal to the Board of Adjustment. After reviewing the pleadings, we find that these issues are identical to those addressed in this section, so we will address them as one.

constituted a "religious assembly" and his decision allowing the construction to move forward, including approving the site plan and entering into the restrictive covenant. The City argues that the authority to make such use determinations is delegated to Guernsey by the LDC. We agree.

Section 25-2-2(A) of the land development code states that "the director of the Planning and Development Review Department shall determine the appropriate use classification for an existing or proposed use activity." AUSTIN, TEX., LAND DEV. CODE § 25-2-2(A). Here, with respect to each complained-of activity—Guernsey's email, the restrictive covenant, approval of the site application, or any other activity determined to be a use classification—Guernsey had the statutory discretion to make such determinations and/or take such actions. *See id.* Therefore, we hold that this claim is barred by immunity. *See Saenz*, 319 S.W.3d at 920.

## 2. Forwarding Hill Country's Appeal to the Board of Adjustment

Next, Hill Country and Covered Bridge's second set of ultra vires claims relate to Guernsey's failure to forward an appeal of his actions to the City of Austin Board of Adjustment. We first look to the relevant portions of the LDC and the Texas Local Government Code relating to appeals from administrative decisions.[5]

Section 25-1-182 of the LDC states that an "interested party" may initiate an appeal by filing a notice of appeal with the responsible director or building official, as applicable, not later than: (1) the 14th day after the date of the decision of a board or commission;

---

[5] *See also* TEX. LOC. GOV'T CODE ANN. § 211.010 (West, Westlaw through 2013 3d C.S.) (setting forth the broader, general parameters of the appeals process to the board of adjustment).

or (2) the 20th day after an administrative decision. AUSTIN, TEX., LAND DEV. CODE § 25-1-182. When the responsible director receives the notice of appeal, he "shall promptly notify the presiding officer of the body to which the appeal is made and, if the applicant is not the appellant, the applicant." *Id.* § 25-1-185. The LDC explains that a person has standing to appeal a decision if: (1) the person is an interested party; and (2) a provision of this title identifies the decision as one that may be appealed by that person. *Id.* § 25-1-181(A)(1)–(2). Furthermore, the "body holding a public hearing on an appeal shall determine whether a person has standing to appeal the decision." *Id.* § 25-1-181(B).

If the appellant has standing, the appellant must establish that the decision being appealed is contrary to applicable law or regulations. *Id.* § 25-1-190. The body hearing an appeal may exercise the power of the official or body whose decision is appealed, and a decision may be upheld, modified, or reversed. *Id.* § 25-1-192. Finally, (1) a person aggrieved by a decision of the board; (2) a taxpayer; or (3) an officer, department, board or bureau of the municipality may file a verified petition for judicial review in district court, county court, or county court-at-law within ten days after the date the decision is filed in the board's office. *See* TEX. LOC. GOV'T CODE ANN. § 211.011 (West, Westlaw through 2013 3d C.S.). In its petition for judicial review, the petitioner must state that the board of adjustment's decision is illegal "in whole or in part" and specify the grounds of the illegality. *Id.* § 211.011(a). The trial court may then grant a writ of certiorari directed to the board to review the board's decision. *Id.* The trial court may reverse or affirm, in whole or in part, or modify the decision that is appealed. *Id.* § 211.011(f).

Hill Country alleged that it filed an appeal on October 21, 2011 to be heard by the Board of Adjustment complaining about Guernsey's use determination related to the

12

Church project. We note that Covered Bridge neither joined Hill Country's appeal nor did it file a separate appeal related to the Church's proposed project. As a result, Covered Bridge lacks a justiciable controversy in this declaratory action related to Guernsey's purported ultra vires actions of failing to forward the appeal to the Board of Adjustment. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) ("A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought."). To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute. *Id.* Absent a justiciable interest, Covered Bridge lacks standing to bring the second ultra vires action because no real controversy exists between Covered Bridge and Guernsey or the City on this particular issue. *See Tex. Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Therefore, we hold that the trial court did not err in granting the plea to the jurisdiction solely as it relates to Covered Bridge on the issue of Guernsey's ultra vires actions of not forwarding Hill Country's appeal.

On October 27, 2011, through a letter from the City's Law Department, Guernsey's department rejected Hill Country's notice of appeal, stating that it was filed more than twenty days after Guernsey's use determination on December 23, 2008, and was thus untimely. On December 12, 2011, Hill Country disputed Guernsey's interpretations of which action it was appealing and requested the City to forward its appeal to the City's Board of Adjustment. Again, on December 30, 2011, the City reaffirmed its position from the October 27, 2011 letter and barred Hill Country's appeal.

13

After construing the pleadings liberally in Hill Country's favor, we conclude that Hill Country sufficiently pleaded jurisdictional facts to invoke the trial court's subject matter jurisdiction on the alleged ultra vires action that Guernsey failed to forward Hill Country's appeal to the Board of Adjustment. Hill Country has appropriately cited the controlling provisions related to administrative appeals procedures and the ministerial duties that respectively belong to Guernsey and the Board of Adjustment. Hill Country further alleged that Guernsey failed to comply with the controlling provisions and failed to perform the purely ministerial act of forwarding its appeal to the Board of Adjustment.

In their plea to the jurisdiction, neither Guernsey nor the City specifically address how the trial court lacks jurisdiction over this particular alleged ultra vires action other than to assert that Hill Country lacked standing to bring the administrative appeal at its inception. While this argument may ultimately prove to be true, our concern today is limited to the issue of whether the trial court possessed subject-matter jurisdiction to hear Hill Country's ultra vires claims that Guernsey failed to forward its administrative appeal. The issue of standing to bring this particular appeal before the Board of Adjustment must first be determined by the Board of Adjustment before it can be decided by the trial court. *See* AUSTIN, TEX., LAND DEV. CODE § 25-1-181(B). Based upon Hill Country's undisputed allegations, it has not had an opportunity to make its administrative appeal because of Guernsey's failure to forward it to the Board of Adjustment. As a result, these ultra vires allegations are not those for which Guernsey is afforded immunity. *See Heinrich*, 284 S.W.3d at 372. We hold that the trial court erred in granting Guernsey and the City's plea to the jurisdiction on Hill Country's ultra vires claims against Guernsey for failure to

14

forward its appeal to the Board of Adjustment.[6]

### b. Due Process Claims

Hill Country next alleged that if Guernsey's actions related to its appeal are held to be valid or did not exceed the City's ordinances, the City violated its due process rights under the local government code to notice and the opportunity to be heard. Earlier, we held that the trial court had jurisdiction to hear Hill Country's ultra vires claims related to Guernsey's failure to forward the administrative appeal. However, any due process claims by Hill Country are unripe at this stage of the proceeding. Ripeness, like standing, is a threshold issue that implicates subject matter jurisdiction. *Patterson v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). Standing focuses on the question of who may bring an action, while ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Id.* The very nature of Hill Country's due process allegations depend upon a contingency—i.e., "if Guernsey's actions . . . are held to be valid." The trial court may agree with Hill Country that Guernsey's actions were ultra vires, and it would render this point moot. Therefore, because this claim is unripe, the trial court did not err in dismissing it for lack of jurisdiction.

---

[6] In its prayer for relief, Hill Country asks this court to "order a writ of mandamus" directing Guernsey to forward its administrative appeal to the City of Austin Board of Adjustment. Original proceedings, including petitions for writs of mandamus, are governed by the procedures set forth in the Texas Rules of Appellate Procedure. *See generally* TEX. R. APP. P. 52.1–52.11. Hill Country, however, has failed to comply with these procedures for us to properly consider such requested relief. Accordingly, we decline to address Hill Country's request for mandamus relief.

15

### c.    Vagueness Challenge

Next, Hill Country and Covered Bridge assert a vagueness challenge to the City's LDC as it relates to their "rights to notice, participation, and/or appeal relating to the land use determinations" made by Guernsey on the Church project.    Because Hill Country and Covered Bridge's vagueness challenge centers on Guernsey's use determination, the LDC provides for administrative remedies by appeal to the Board of Adjustment.    *See* AUSTIN, TEX., LAND DEV. CODE § 25-1-182.  After obtaining a review from the Board of Adjustment, the aggrieved party may then seek judicial review.    *See* TEX. LOC. GOV'T CODE ANN. § 211.011.    Simply put, administrative remedies must first be exhausted before a party may seek judicial review of a determination made by an administrative official.    *See Buffalo Equities, Ltd. v. City of Austin*, No. 03-05-00356-CV, 2008 WL 1990295 at *4 (Tex. App.—Austin May 9, 2008, no pet.) (mem. op.) (internal citations omitted).    Failure to exhaust all available administrative relief before seeking judicial relief deprives a court of jurisdiction.    *See Larry Koch, Inc. v. Tex. Natural Conserv. Comm'n*, 52 S.W.3d 833, 839 (Tex. App.—Austin 2001, pet. denied) (citing *Lindsay v. Sterling*, 690 S.W.2d 560, 563 (Tex. 1985)).    Accordingly, the trial court lacks jurisdiction to hear Hill Country and Covered Bridge's vagueness challenge because neither party exhausted its administrative remedies before filing suit on this claim.

### d.    Summary

In summary, the trial court did not err in granting Guernsey and the City's plea to the jurisdiction on the following claims:    (1) Hill Country and Covered Bridge's ultra vires claims against Guernsey related to his use determination; (2) Covered Bridge's ultra vires claims based upon Guernsey's failure to forward Hill Country's appeal to the Board of

16

Adjustment; (3) Hill Country and Covered Bridge's due process claims; and (4) Hill Country and Covered Bridge's vagueness challenge. The trial court erred in granting Guernsey and the City's plea to the jurisdiction with regard to Hill Country's ultra vires claims based upon Guernsey's failure to forward Hill Country's appeal to the Board of Adjustment. Therefore, Hill Country and Covered Bridge's issue on appeal is overruled in part and sustained in part.

### III.    CONCLUSION

We affirm the trial court's judgment in part and reverse and remand to the trial court to hear Hill Country's ultra vires action based upon Guernsey's failure to forward Hill Country's appeal to the Board of Adjustment.


GINA M. BENAVIDES,
Justice


Delivered and filed the
7th day of May, 2015.

17